1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAIR HOUSING  COUNCIL OF RIVERSIDE COUNTY, INC., and JAMES BEASLEY,<br><br>     **Plaintiffs,**<br><br>     **vs.**<br><br>**GROUP XIII PROPERTIES LP, GROUP XIII PROPERTIES, INC., SWARANJIT (MIKE)  NIJJAR, ELISA VALERIO, DHA OPPORTUNITY 1, LP, DHA OPPORTUNITY 1, INC., and DALJIT KLER,**<br><br>     **Defendants.** | Case 5:21-cv-00941-JGB-KKx<br><br>**JOINT STIPULATION PURSUANT TO LR 37 IN CONNECTION WITH PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>**_DISCOVERY MATTER_**<br><br>Hearing:<br>Date:     February 9, 2023<br>Time:     10:00 a.m.<br>Judge:    Hon. Kenly Kiya Kato<br><br>Discovery Cutoff:  March 27, 2023<br>Pretrial Conference:  August 28, 2023<br>Trial Date:  September 19, 2023 |

Pursuant to LR 37-2, the parties hereby submit their joint stipulation in connection with plaintiffs' motion to compel further responses and production of documents from defendants pursuant to plaintiffs' first (and third) requests for production Nos. 1-22 and second request for production Nos. 25-39 and 52-59.

Supporting declarations including exhibits are filed concurrently with this joint stipulation: The Declaration of Christopher Brancart on behalf of plaintiffs ("Brancart Dec."), authenticating Exhibits 1 - 34B and the Declaration of D. Wayne Leech on

1  behalf of defendants ("Leech decl."), authenticating Exhibits 35-42.

2      Dated:  January 19, 2023.

3                    Respectfully submitted,

4  BRANCART & BRANCART          LAW OFFICE OF D. WAYNE
5                               LEECH, A PROFESSIONAL
                                CORPORATION
6  /s/ Christopher Brancart
   Christopher Brancart (SBN 128475)   /s/Wayne Leech
7  cbrancart@brancart.com        Wayne Leech (SBN 97676)
   P.O. Box 686                 wayne@leechlaw.com
8  Pescadero, CA 94060          11001 Main Street, Suite 200
   Tel:   (650) 879-0141        El Monte, CA 91731
9  Fax:   (650) 879-1103        Tel:   (626) 443-0061
                                Fax:  (626) 443-1165
10 Attorneys for Plaintiffs
                                Attorneys for Defendants
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

I.    INTRODUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Plaintiffs' Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Defendants' Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   DISCOVERY SOUGHT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Plaintiffs' Attempts to Obtain Discovery . . . . . . . . . . . . . . . . . . . 11

    B.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1.    Communications with and regarding plaintiffs and witnesses

    (requests 1-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.    Requests 1-6 seeking information regarding
            Plaintiffs, Persons with knowledge, and
            Elisa Valerio seek Relevant Information  . . . . . . . . . . . . . . . . . 20

        2.    Defendants have failed to provide a privilege log. . . . . . . . . . 21

    D.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

2.    Defendants' operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    B.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        1.    Requests seeking information re Policies, instructions,
            forms, Training, and Property management program . . . . . . 25

    C.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

3.    Ownership and control . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    A.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    B.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    C.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

4.   Insurance policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

     A.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

     B.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

     C.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

5.   Financial condition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

     A.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

     B.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

     C.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

6.   Requests for which defendants agreed to produce documents and ESI . . . . . . 38

     A.    Discovery Requests at Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

     B.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

     C.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

III.   ARGUMENT RE: PROPORTIONALITY OF PLAINTIFFS'

       REQUESTS FOR PRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

       A.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

       B.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

IV.    ARGUMENT RE:  DEFENDANTS' PRIVACY OBJECTIONS . . . . . . . . 56

       A.    Plaintiffs' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

       B.    Defendants' Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

# JOINT STIPULATION OF THE PARTIES

## I.    INTRODUCTIONS

**A.    Plaintiffs' Introduction:**    This fair housing action arises out of defendants' ownership and operation of the Villa La Paz apartments located at 675 South San Jacinto Street in Hemet, one of dozens of apartment buildings owned or operated by defendant Swaranjit (Mike) Nijjar and his related limited partnerships, LLCs, and corporations in Riverside County and the Southland.  James Beasley, a Black prospective tenant, and the Fair Housing Council of Riverside, the county's nonprofit fair housing agency, filed suit on June 2, 2021, alleging that Villa La Paz property owner of record Group XIII Properties LP, its general partner, Group XIII Properties Inc., the corporation's president and CEO, Mike Nijjar, and the apartment manager, Elisa Valerio, violated the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* and related state laws by discriminating on the basis of race.  (ECF 1.)

On August 6, 2021, during the early meeting of counsel, defendants stated that Group XIII Properties LP had actually transferred the property in 2019 to DHA Opportunity 1, LP, an entity nominally controlled by Daljit Kler, defendant Mike Nijjar's sister.  Defendants did not provide any documentation supporting that assertion. (See Declaration of Christopher Brancart attached hereto ["Brancart Dec."] ¶¶ 5-6 ).

Plaintiffs promptly pursued discovery in this case.  Plaintiffs propounded their first round of written discovery on defendants Group XIII Properties LP, Group XIII Properties, Inc., Mike Nijjar, and Elisa Valerio in December 2021.  At the same time plaintiff noticed the depositions of Mike Nijjar and Elisa Valerio for February 2022. (Brancart Dec. ¶¶ 9-10 .) Defense counsel informed plaintiffs that he was unavailable on the dates noticed in February, and alternative dates were requested from defense counsel but were never provided.  (Id.)

The Court issued the Scheduling Order on January 27, 2022, amended on December 29, 2022. (ECF 26, 37; Brancart Dec. Exh. 1). The deadline for the

completion of all discovery, including for motions to compel discovery, is March 27, 2023.  The dispositive motion hearing cut-off is June 5, 2023, pretrial conference is August 28, 2023, and a five-day jury trial is scheduled to commence on September 19, 2023. (Id.) On June 9, plaintiffs again noticed depositions for defendants but was again informed of unavailability by defense counsel without being offered alternative dates.  (Brancart Dec. ¶ 3).

In February 2022, defendants responded to plaintiffs' written discovery and provided a copy of a deed, recorded on July 30, 20**21** (after this action was filed), conveying the Villa La Paz apartments to DHA Opportunity 1, LP on January 2, 20**19**.  (Brancart Dec. Exh. 2-3.) The parties stipulated and the Court granted permission to plaintiffs to file a first amended complaint adding additional ownership defendants – DHA Opportunity 1, LP, its general partner DHA Opportunity 1, Inc., and Daljit Kler, the president of DHA Opportunity, Inc. and sister of defendant Mike Nijjar.  (ECF 31, 32.)  Defendants answered on April 4, 2022.  (ECF 33.)

In the first amended complaint plaintiffs allege that defendants discriminated against James Beasley on the basis of his race when they refused to rent an available apartment at the Villa La Paz Apartments to him in May 2020.  (First Amended Complaint, ECF 32 ¶¶ 13-24.) Beasley submitted an application to rent an available unit, but when he was shown the unit by Valerio and her husband on Tuesday May 5, he saw that it was dirty and unready to rent.  Beasley identified items that needed to be taken care of before he could move in.  Valerio said she would have the unit ready by Saturday, May 9.  As she was leaving the unit, Beasley overheard Valerio say to her husband words to the effect of, "this is why I don't like renting to n—ers; they are always complaining." (ECF 32 ¶¶ 15-22.)  The next day, Beasley texted with Valerio and confirmed that the unit would be ready on May 9.  (Id. ¶ 24.)  On Friday, Beasley texted Valerio asking whether she had any other apartments that were rent ready.  Manager Valerio responded that he should look at an apartment located at 145 Inez Street in Hemet.  (Id. ¶¶ 26-27.)  Beasley was familiar with that area and

knew the apartment was near a liquor store which attracted crime.  A few hours later Beasley texted Valerio to make arrangements to drop off a deposit for the Villa La Paz unit, but she responded that the unit was no longer available.  (Id. ¶¶ 29.) Surprised, Beasley asked two friends to text Valerio regarding apartment availability; Valerio told both that there was a unit available and ready to rent.  (Id. ¶¶ 31-32.) Later that day Beasley texted Valerio, who responded that the unit had been rented. (Id.)  Beasley contacted the Fair Housing Council of Riverside County about his experience.  (Id. ¶ 35.)  The Fair Housing Council had previously received hundreds of complaints regarding the condition and management of dwellings owned or operated by defendant Mike Nijjar and his related business entities in Riverside County.  (Id. ¶ 33-34.)

The documents sought by plaintiffs are relevant to establish their claims under the Fair Housing Act and related state laws and proportional to the claims at issue. Defendants' objections should be overruled and they should be ordered to produce the documents requested below.

**B.    Defendants' Introduction:**

1.    Ownership and management of the Villa La Paz apartments:

On December 31, 2018, Defendant Group XIII Properties LP acquired the real property known as the Villa La Paz apartments ("Apartments"). (Leech decl., ¶ 2, Ex. 35). On January 2, 2019, Group XIII Properties LP transferred title to the Apartments to Defendant DHA Opportunity 1 LP. (Leech decl., ¶ 3, Ex. 36).  DHA Opportunity 1 LP has owned the Apartments from January 2, 2019, to the present. ECF 32, ¶ 8.

On January 1, 2020, DHA Opportunity 1 LP contracted with Pro Management Company Inc., a Nevada corporation (a non-party) ("Pro Management"), to provide professional property management services to manage the Apartments on behalf of DHA Opportunity 1 LP. (Leech decl., ¶5, Ex. 37). Pro Management has managed the Apartments from January 1, 2020 to the present.

Defendant Elisa Valerio was employed by Pro Management Company Inc., as a residential apartment manager for the Apartments from January 1, 2020 to March 31, 2021. (Leech decl., 6-7, Ex's 37-38).

Plaintiffs have known since before October 22, 2021, that Valerio was employed by Pro Management, not the Defendants, as they were advised in the Joint Rule 26(f) Report, as follows:

> "Defendants deny the allegations, deny liability and further deny that the defendants were the owners of the Subject Property at the time of the alleged actions. Defendants admit that GROUP XIII PROPERTIES LP owned the Subject Property from December 31, 2018 to January 2, 2019. Thereafter the owner of the Subject Property is and has been DHA OPPORTUNITY 1, LP, a California Limited Partnership. Defendants GROUP XIII PROPERTIES LP, GROUP XIII PROPERTIES, INC., and SWARANJIT (MIKE) NIJJAR did not employ defendant ELISA VALERIO. ELISA VALERIO was employed by PRO MANAGEMENT COMPANY INC., a Nevada corporation. Plaintiff Beasley did not have, and never presented, the security deposit and first month's rent in order to secure the rental of the Subject Property. The Subject Property was rented to another black tenant, a tenant that presented the security deposit and first month's rent". (Leech decl., ¶8, Ex. 40, ECF 19, 2:15-274).

In spite of knowing that Pro Management was the management company managing the Apartments and employing Valerio, Plaintiffs never named Pro Management as a defendant.

Defendants Swaranjit (Mike) Nijjar, Group XIII Properties Inc., Daljit Kler and DHA Opportunity I Inc., have never owned the Apartments, never managed the Apartments, never employed Elisa Valerio to manage the Apartments, never contracted with Pro Management Company Inc., to manage the Apartments and have never had interactions with Plaintiff. Group XIII Properties LP has not owned, or managed the Apartments after January 2, 2019, has not employed Valerio, has not

1  contracted with Pro Management Company Inc., to manage the Apartments and has

2  not interacted with Plaintiff.

3       Defendants' counsel has asked Plaintiffs' counsel to dismiss Swaranjit (Mike)

4  Nijjar, Group XIII Properties Inc., Daljit Kler, and Group XIII Properties LP. To date

5  Plaintiffs have refused to dismiss said Defendants. Said Defendants are preparing a

6  motion for summary judgment since they did not own or manage the Apartments, did

7  not employ Valerio, and did not interact with Plaintiff.

8       2.      Response to Plaintiffs' allegations in the First Amended Complaint ECF

9              32

10      Beasley interacted only with Valerio. He did not interact with any of the other

11 Defendants. ECF 32. Valerio knew that Beasley was African American when she

12 received his rental application and identification. ECF 32  15. Valerio ran a credit

13 check and verified that Beasley passed the credit check and advised him that he

14 needed to pay the first month rent and security deposit to reserve the apartment. ECF

15 32  16. (If Valerio was discriminating against Beasley because he was African

16 American, she simply would have advised him that he did not pass the credit check).

17 Valerio showed Beasley the apartment and advised him the he needed to pay the first

18 month rent and the security deposit to reserve the apartment. Contrary to the

19 allegations in the FAC, Valerio's husband was not with Valerio when she showed the

20 apartment to Beasley. Valerio never used the "N" word when Beasley was at the

21 apartment.  Beasley asked whether other apartments were available. Valerio provided

22 him with another apartment address. Rather than looking at the other apartment,

23 Beasley asked Valerio whether he could pay the deposit now and pay the balance

24 later. ECF 32  26-29. Valerio advised that he needed to pay the first month rent and

25 security deposit. Pro Management's policy is that apartment units cannot be reserved

26 unless the first month rent and security deposit are paid. Beasley never tendered, or

27 offered to pay, the first month rent and security deposit in order to secure the

28 apartment. Beasley never told Valerio that he wanted to reserve the apartment, or sign

a lease, or pay the first month rent and security deposit.

A few days later, Valerio rented the unit to another African American tenant. Valerio (a Hispanic) rented other apartment units to other African American tenants, and Hispanic tenants, before and after her interactions with Beasley. Angry that Valerio would not reserve the apartment for only the security deposit, Beasley has filed this false claim,

3.   Status of discovery

To date, the Defendants, by obtaining the documents from Pro Management, which has custody of most of the documents sought, has produced all of Valerio's personnel file, all of the "approved but not moved in" files in which Valerio was involved, all of the "approved and moved in" files in which Valerio was involved, all of the "moved out" files which Valerio was involved, all of the "rejected tenant applications" in which Valerio was involved, Valerio's manager files, insurance policy documents, deeds, management agreements, credit applications, driver's licenses, etc., marked confidential, totaling 1491 pages.  Sensitive information such as social security and driver's license numbers, tax returns, paystubs, financial and bank account information, etc., have been redacted.  Pro Management has recently produced additional documents to Defendants' counsel. Defendants' counsel is reviewing the additional documents produced by Pro Management, marking them confidential and redacting sensitive information of nonparties (social security and driver's license numbers, bank account balances, financial information, etc.). Pro Management does not keep hard copies of documents. Pro Management's policy is to scan and save the electronic documents as a pdf and to shred the hard copies. All of the documents that have been provided to Defendants' counsel by Pro Management are electronic (pdf) files. On or around December 9, 2022, Pro Management provided Defendants' counsel with additional electronic (pdf) files which may be responsive to Plaintiffs' request for documents. On December 9, 2022, Defendants' counsel produced the additional documents to Plaintiffs after redacting

sensitive information (i.e. social security and driver's license numbers, income tax records, etc.) and marking them confidential.  To date Defendants have produced 2518 pages of documents responsive to the request for production of documents.

It should be noted that Plaintiffs have not produced any documents to Defendants.

## II. DISCOVERY SOUGHT

### A.    Plaintiffs' Attempts to Obtain Discovery

Plaintiffs have diligently sought to obtain discovery in this case.  Almost a year ago, on December 27, 2021, plaintiffs served their first request for production (Nos. 1-24) on the then-existing defendants. (Brancart Dec. ¶ 9; Exh. 5.)  Defendants served responses consisting of objections only on February 25, 2022.  (Id. ¶¶ 11-12, Exh. 7, 8.)  Between April 20 and May 2, plaintiffs sought to obtain responsive documents from defendants.  (Id., ¶¶ 13-14; Exhs. 9-10.)  On May 3, the parties met and conferred regarding defendants' discovery responses.  (Id., ¶ 15; Exh. 11-12.) Defense counsel promised to make paper copies of documents regarding the operation of the subject property available to plaintiffs for inspection and copying on May 27 and to send defendants' electronic tenant files and records within the next two weeks. (Id., ¶ 16; Exh. 12.)

On May 12, 2022, plaintiffs's counsel formally initiated the LR 37-1 process to move to compel further responses to discovery from the original defendants Group XIII Properties LP; Group XIII Properties, Inc.; Swaranjit (Mike) Nijjar; and Elisa Valerio. (Brancart Dec. ¶¶ 18-20, Exh. 14-15.)  On May 24, defense counsel advised that his clients do not maintain paper copies, but that he was in the process of reviewing electronic copies and would produce them by May 27.  (Brancart Dec. ¶¶ 14-21; Exh. 14-16.)  On May 31 and June 2, plaintiffs' counsel's office emailed defense counsel inquiring as to the status of that production but received no response. (Id., ¶¶ 22-23; Exh. 17-18.)

On June 6, defendants provided supplemental discovery responses and a limited number of documents:  [1] an insurance declaration page and contract, but no policy, [2] a property management agreement between DHA Opportunity 1, LP and Pro Management, [3] two redacted tenant files, and [4] three deeds.  In answer to interrogatories, defendants created a chart or printout listing tenant names and dates of occupancy and a column entitled "Assumed Race." (Brancart Dec. ¶¶ 24-25; Exh. 19.)  No electronic tenant files were produced.  Defense counsel maintained he was still in the process of redacting private information from the files; plaintiffs responded that no redaction was necessary because of the existence of the protective order.  (Id., ¶¶ 26-28, Exh. 19-22.)

On July 1, 2022, still having received no electronic rental files, plaintiffs' counsel provided defendants with their portion of the draft stipulation required by LR 37-1 to be filed in support of plaintiffs' motion to compel responses and production from defendants to plaintiffs' first request for production of documents Nos. 1-20 and 22. (Brancart Dec. ¶ 29; Exh. 22a.) In response, defendants agreed to make further responses and, on July 10-11, they produced documents and served supplemental discovery responses.  (Brancart Dec. ¶ 30-31; Exh. 23, 23a.)  After reviewing the documents produced, plaintiffs identified categories of documents missing from the production.  (Id.)

Meanwhile, on June 16, 2022, plaintiffs had served a document subpoena on Pro Management, Inc., the management company with whom DHA Opportunity 1, LP contracted to operate the Villa La Paz Apartments.  (Brancart Dec. ¶ 32; Exh. 23b [Categories 1-15].)  On July 11, in connection with the production of documents by the initially-named defendants, defense counsel advised that the documents defendants had produced were primarily from Pro Management. (Brancart Dec. ¶ 32; Exh. 23a.) On July 30, 2022, Wayne Leech – serving as counsel for Pro Management as well as all defendants – served objections and a response to that subpoena. (Brancart Dec. ¶ 32; Exh. 23c.) On August 27, 2022, plaintiffs' counsel requested to

meet and confer regarding those objections and responses, and counsel did so on September 2, 2022.  (Brancart Dec. 32; Exh. 23d.)  During that meet and confer, defense counsel advised that he had obtained additional documents responsive to plaintiff's requests for production of documents to defendants and/or the subpoena to Pro Management, and that he would be producing them during the week of September 5.  (Brancart Dec. ¶ 33, Exh. 24.)  No documents were produced that week.  (Id.)  On September 16, plaintiffs' office emailed defense counsel inquiring on the status of that production.  (Brancart Dec. ¶ 34; Exh. 25.)  Defense counsel did not respond.  (Id.)

On September 22, 2022, plaintiffs sent a written request to meet and confer regarding the documents missing from defendants' July 11 supplemental production.  (Brancart Dec. ¶ 35; Exh. 26.)  On September 26, 2022, the parties met and conferred pursuant to LR 37-1.  (Brancart Dec. ¶ 37.)  During that conference, plaintiffs agreed to re-serve their first request for production (Nos. 1-24) on all defendants, including those added by the first amended complaint, re-titled as the third request for production, and to email a follow-up subpoena to Pro Management.  (Brancart Dec. ¶ 37.)  On September 22, 2022, plaintiffs served second requests for production (25-60) on all defendants, Group XIII Properties LP, Group XIII Properties, Inc., Swaranjit (Mike) Nijjar, Elisa Valerio, DHA Opportunity 1, LP, DHA Opportunity 1, Inc., and Daljit Kler.  (Brancart Dec. ¶ 36; Exh. 27.)  Plaintiffs served the third request for production (Nos. 1-24) and followup subpoena on Pro Management on September 28, 2022.  (Brancart Dec. ¶ 38; Exh. 28, 28a.)

On October 22, 2022, defendants served responses to plaintiffs' second request for production of documents.  (Brancart Dec. ¶ 39; Exh, 29.)  Defendants provided responses to the third request for production (Nos. 1-24) on October 22, 2022.  (Brancart Dec. ¶ 40; Exh. 30.)  Defense counsel advised that his client was providing him with additional documents that he hoped to produce to plaintiffs "in a week or 10 days."  (Id., Exh. 31.)  On October 28, 2022, plaintiffs' counsel wrote defense

counsel, advising that in spite of defense counsel's prior representations on September 2, and October 22, defendants had not produced any additional documents since July 10, 2022, nor had they produced a privilege log.  (Brancart Dec. ¶ 41; Exh. 32.)   Later that day, defense counsel emailed Pro Management's objections in response to plaintiffs' second document subpoena, stating that documents would be sent under separate email.  (Brancart Dec. ¶ 41; Exh. 32a, 33.)

The insurance information provided by defendants pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv). consists of a declaration page and pages regarding the properties covered.  The actual policy provisions are not attached.  On November 7, 2022, plaintiffs' counsel emailed defense counsel and requested a copy of the policy. (Brancart Dec. ¶ 42; Exh. 34.)  Defense counsel has not responded to that email.

On November 30, 2022, having received no additional documents from defendants, plaintiffs' counsel provided defendants with their portion of the draft stipulation required by LR 37-1 to be filed in support of plaintiffs' motion to compel further responses and production from defendants to plaintiffs' first (and third) requests for production Nos. 1-22 and plaintiffs' second request for production Nos. 25-39 and 52-59.  (Brancart Dec. ¶ 43; Exh. 34a.)

On December 9, 2022, defendants sent plaintiffs two files by email, "Other Tenants 1508" which consisted of twelve additional tenant files for the La Villa Paz apartments (document numbers 1492-2215) and "3146" which consisted of six tenant files for apartments located at 212, 214, 216, and 218 South San Jacinto, in Hemet, CA (document numbers 2216-2518).  Three of those applications were processed by defendant Elisa Valerio.  (Brancart Dec.;¶ 44; Exh. 34b.)

This motion seeks to compel production of the documents defendants have agreed to produce and to otherwise compel production of documents responsive to requests.

//

-14-

**B.    Discovery Requests at Issue**

1.    Communications with and regarding plaintiffs and witnesses (requests 1-6

**Request No. 1:**

Please produce any document that discusses, concerns, or regards plaintiff James Beasley, including any document that may be used to impeach Beasley's character or to contradict Beasley's testimony.

**Response to Request 1 (served July 11, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. These Responding Parties are unable to comply because the documents are not in the possession custody or control of the documents responsive to the request, other than the pleadings on file herein and the deed in which title to the Subject Property was transferred to DHA OPPORTUNITY 1, LP on or about January 2, 2019. On information and belief, Pro Management Company Inc., the former employer of ELISA VALERIO, and DHA OPPORTUNITY 1, LP, who contracted with Pro Management Company Inc., to provide property management services for DHA OPPORTUNITY 1, LP at the Subject Property may have documents within its possession custody or control responsive to the request. Note that as of the date of this response, DHA OPPORTUNITY 1, LP has provided approximately 1491 pages of documents with its Initial Disclosures, some of which may be responsive to the request.

**Response to Re-Served Request 1 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party has complied with defendants' Initial Disclosures.

**Request No. 2:**

If not produced in response to request 1, then please produce any document that reflect any communication between any defendant or its agent and plaintiff James Beasley, including any communication transmitted to or from [1] the email *mrfamous1981@ gmail.com* or [2] cell number *760-472-2632.*

**Response to Request 2 (served July 11, 2022):**  Same as to No. 1 above.

**Response to Re-Served Request 2 (served October 22, 2022):**  Same as to No. 1 above.

**Request No. 3:**

If not produced in response to request 1, then please produce any document that reflects any communication, regardless of nature, source, or recipient, that discusses, concerns, or regards plaintiff James Beasley.

**Response to Request 3 (served July 11, 2022):**  Same as to No. 1 above.

**Response to Re-Served Request 3 (served October 22, 2022):** Same as to No. 1 above.

-16-

**Request No. 4:**

Please produce any document that discusses, concerns, or regards plaintiff Fair Housing Council of Riverside County (FHCRC)[1], transmitted, received or dated at any time since January 1, 2017, including any document that may be used to impeach any FHCRC employee's character or to contradict any FHCRC employee's testimony. [FN 2: As used in these requests, "Fair Housing Council of Riverside County" Or "FHCRC" includes any employee of that organization.]

**Response to Request 3 (served July 11, 2022):** Same as to No. 1 above.

**Response to Re-Served Request 4 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. This responding party is unable to comply because the document never existed, or has been lost or stolen, or has been destroyed, or is not in the possession, custody or control of the responding party. Plaintiff should have any documents responsive to the request in its possession, custody or control.

**Request No. 5:**

If not produced in response to request 4, then please produce any document that reflects any communication between any defendant or its agent and Fair Housing Council of Riverside County, transmitted, received or dated at any time since January

---

[1]As used in these requests, "Fair Housing Council of Riverside County" Or "FHCRC" includes any employee of that organization.

1, 2017.

**Response to Request 5 (served July 11, 2022):**  Same responses as to Request 1 above.

**Response to Re-Served Request 5 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: Any privileged documents are attorney client communications regarding this litigation.

**Request No. 6:**

If not produced in response to request 4, then please produce any document that reflects any communication, regardless of nature, source, or recipient, that discusses, concerns, or regards Fair Housing Council of Riverside County, transmitted, received or dated at any time since January 1, 2017.

**Response to Request 6 (served July 11, 2022):**  Same responses as to Request 1 above.

**Response to Re-Served Request 6 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: Any privileged

documents are attorney client communications regarding this litigation.

**Request No. 8:**

Please produce any document that discusses, concerns, or regards the person identified as Shandra Burks in the complaint, including any communication to, from, or about Burks.

**Response to Request 8 (served July 11, 2022):** Same responses as to Request 1 above.

**Response to Re-Served Request 8 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. This responding party is unable to comply because the document never existed, or has been lost or stolen, or has been destroyed, or is not in the possession, custody or control of the responding party. Ms. Burks should have any documents responsive to the request in its possession, custody or control.

**Request No. 9:**

Please produce any document that discusses, concerns, or regards the person identified as Blair Edwards in the complaint, including any communication to, from, or about Edwards.

**Response to Request 9 (served July 11, 2022):** Same responses as to Request 1 above.

**Response to Re-Served Request 9 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. This responding party is unable to comply because the document never existed, or has been lost or stolen, or has been destroyed, or is not in the possession, custody or control of the responding party. Ms. Burks should have any documents responsive to the request in its possession, custody or control.

### C.   Plaintiffs' Position

#### 1.   *Requests 1-6 seeking information regarding Plaintiffs, Persons with knowledge, and Elisa Valerio seek Relevant Information*

Requests Nos. 1-6 (regarding plaintiffs), 7-9 (regarding other persons with knowledge), and 10 (regarding Elisa Valerio) are narrowly drawn to request information about the individuals whose alleged experiences form the gravamen of the operative complaint (ECF 32).   Requests Nos. 1-6 seek information about plaintiffs James Beasley and FHCRC (ECF 32, *passim.*); Request No. 8 seeks information about Shandra Burks, one of Beasley's friends who posed as a prospective tenant to Varerio (ECF 32, ¶¶ 25, 30-31, 33); Request No. 9 seeks information about Blair Edwards, another one of Beasley's friends who posed as a prospective tenant to Valerio (ECF 32, ¶¶ 32, 34); *Request No. 10 seeks information about Valerio, the apartment manager with whom Beasley communicated about rental of a dwelling manager and who rejected his application based on unavailability (ECF 32, ¶¶ 11, 14-34).*   Request No. 7 (which, as set forth below, defendants have agreed to produce documents in response to) seeks information about

any other person "disclosed or identified by any party as a potential witness or person with knowledge."

Each of these individuals is known to defendants.  Three of them – Beasley, FHCRC, and Valerio – are parties to the case. The other two – Burks and Edwards – communicated with Valerio about the availability of units for rent.  (ECF 32, ¶¶ 25, 30-31, 32-34.) The final, catch-all category is intended to cover any other witnesses disclosed by the parties, including the 16 witnesses that the parties jointly identified in their Rule 26(f) Report (ECF 19, p. 7-8).  It is also intended to cover any other witnesses that may be eventually disclosed by defendants.

These requests are plainly relevant. The documents that plaintiffs request will reflect defendants' knowledge about each plaintiff or witness at the time of the document's creation.  That specific, contemporaneous knowledge is relevant to establishing defendants' intent.  It also provides plaintiffs with information to test the factual basis of defenses, since defendants cannot ground a defense upon information they did not know at the time.  Only by obtaining the documents regarding the key percipient witnesses in this case that defendants created or controlled reflecting their rental practices and interactions can plaintiffs elicit admissions from defendants and rebut defenses.  The information requested is not only relevant, but also admissible under Fed. R. Evid. 404(b), 406, 801(d)(2).

## 2.    *Defendants have failed to provide a privilege log.*

In response to Request No. 6 seeking "any document that reflects any communication, regardless of nature, source, or recipient, that discusses, concerns, or regards Fair Housing Council of Riverside County, transmitted, received or dated at any time since January 1, 2017," defendants assert that any such documents are protected by the attorney-client privilege.  As alleged in the first amended complaint, "[s]ince 2014, the Fair Housing Council has received hundreds of complaints about the condition and management of rental dwellings controlled by Nijjar."  (ECF 32, ¶ 33.)  Documents reflecting communications between the Fair Housing Council and

defendant Nijjar and defendants are relevant to establish notice for purposes of punitive damages and impairment to the Fair Housing Council's mission. (Id., ¶¶ 34, 37.)

**What's missing and should be ordered produced?**   Documents, including any ESI, regarding any party or disclosed witness, including, for example, Valerio's text messages with Beasley, Burks, and Edwards.  Though defendants claim that Valerio no longer has that phone, they have not explained what attempts they have made to locate the data.

### D.   Defendants' Position

Defendants have produced all documents in their possession, custody or control, consisting of documents obtained from Pro Management. Valerio no longer has the cell phone that she was using in April and May 2020, so she cannot produce any texts, if any existed. Therefore, no text messages can be retrieved, if any existed. Defendants have no emails responsive to the requests. Defendants' counsel has asked Pro Management to carefully search its computer files to ascertain whether any emails and any other documents responsive to the requests exist. To date Pro Management has not located any such emails.

Defendants cannot produce documents evidencing communications if they do not exist, Or if they do not have possession of.

2.   <u>Defendants' operations</u>

### A.   Discovery Requests at Issue

**Request No. 10:**

Please produce a complete copy of any document reflecting, discussing or regarding the employment by any defendant of defendant Elisa Valerio – or any member of Valerio's family – including but limited to Valerio's employment in connection with the management of the Villa La Paz apartments, 675 South San Jacinto Street in Hemet, including any personnel file, employment contract, training

materials, and communications, dated at any time since January 1, 2017.

**Response to Request 10 (served July 11, 2022):**  Same responses as to Request 1 above.

**Response to Re-Served Request 10 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party has complied with defendants' Initial Disclosures.

*Policies, Instructions, Forms*

**Request No. 11:**

A complete copy of any policies, directions, instructions or forms used in connection with the management or operation of the Villa La Paz apartments at any time since January 1, 2017.

**Response to Request 11 (served July 11, 2022):**  Same response as to Request 10 above.

**Response to Re-Served Request 11 (served October 22, 2022):**  Same response as to Request No. 10 above.

**Request No. 12:**

If not produced in response to request 11, then please produce documents sufficient to determine the policies, procedures, directions,  instructions, or practices

followed or guiding the execution of the following rental functions at the Villa La Paz apartments since January 1, 2017:

> [a]    determining whether a vacant apartment is available for rent;
>
> [b]    determining whether an application to rent is complete;
>
> [c]    determining whether an application to rent meets the standard for rental of a dwelling;
>
> [d]    determining the deposit in connection with rental of an apartment;
>
> [e]    determining the rental rate for rental of an apartment;
>
> [f]    referring applicants to other apartment dwellings; and,
>
> [g]    showing an apartment for rent to prospective tenants.

**Response to Request 12 (served July 11, 2022):**  Same response as to Request 10 above.

**Response to Re-Served Request 12 (served October 22, 2022):**  Same response as to Request No. 10 above.

*Training*

**Request No. 13:**

If not produced in response to requests 11 and 12, then please produce a complete copy of any training or orientation materials provided to any person participating in the management or operation of the Villa La Paz apartments at any time since January 1, 2017.

**Response to Request 13 (served July 11, 2022):**  Same response as to Request 10 above.

**Response to Re-Served Request 13 (served October 22, 2022):**  Same response as to Request No. 10 above.

***Property Management Program***

**Request No. 14:**

-24-

Any manual or instructions that describes any property management program used in connection with the management or operation of the Villa La Paz apartments at any time since January 1, 2017.

**Response to Request 14 (served July 11, 2022):**  Same response as to Request 10 above.

**Response to Re-Served Request 14 (served October 22, 2022):**  Same response as to Request No. 10 above.

### B.   Plaintiffs' Position

#### 1.   *Requests seeking information re Policies, instructions, forms, Training, and Property management program*

Requests Nos. 11-12 (regarding policies, instructions, and forms), 13 (regarding training), and 14 (regarding defendants' property management program) are narrowly drawn to obtain information about defendants' relevant housing practices.   Each request describes the desired information "with reasonable particularity" as required under Fed. R. Civ. P. 34(b)(1)(A).   Each request is constrained by a temporal limitation (since January 1, 2017[2]) and a site specific limitation (Villa La Paz apartments).   Where Request 11 seeks a relevant but broad category of material – policies, directions, instructions, or forms used in management of Villa La Paz, Request 12 provides concrete parameters of the management materials to be produced:

If not produced in response to request 11, then please produce

documents sufficient to determine the policies, procedures, directions,

instructions, or practices followed or guiding the execution of the following

rental functions at the Villa La Paz[.]

[2]As alleged in the complaints, the Fair Housing Council has received complaints from tenants about Nijjar operated apartment since 2014, three years before the temporal limitation embedded in each request.

The same is true for Request 13 seeking employee training materials.  Request 14 seeks material regarding the property management program used by defendants in connection with operation of the Villa La Paz; this would provide a data set that reflect the actual implementation of defendants' housing practices and their treatment of tenants.

Discovering information about defendants' housing practices – as reflected in "policies, directions, instructions, or forms" used to guide and implement those practice – is the first building block in proving the commission of a discriminatory housing practice, the core concept in any fair housing case.   The Fair Housing Act (FHA) provide an "aggrieved person" the right to sue for relief.  42 U.S.C. § 3613(a).  An "aggrieved person" is any person injured by a "discriminatory housing practice." 42 U.S.C. § 3602(i).  A "discriminatory housing practice" are the conducted made unlawful by the FHA, codified in §§ 3604, 3605, 3606, and 3617.  42 U.S.C. § 3602(d).  This case claims that defendants violated §§ 3604 (rental practices) and § 3617 (inference with exercise of FHA rights).  Each discriminatory housing practice under § 3604 consist of three component parts: A protected characteristic (e.g., race, sex, etc.), an adverse housing practice (e.g., refusal to rent, misrepresenting unit for rent), and a linkage between the two, typically "because of" used in §§ 3604(a), (b), and (d) or "indicates" as used in § 3604(c).  Thus, as alleged here, plaintiffs claims that defendants violated:

- • § 3604(a) making it unlawful "**to refuse to . . . rent after the making of a bona fide offer, or to refuse to negotiate for the . . . rental of, or otherwise make unavailable or deny, a dwelling to any person** because of *race* . . .; and,

- • § 3604(d) making it unlawful "to represent to any person because of *race* . . . **that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available**.

The proof problem in most FHA cases is demonstrating the linkage between the

**adverse housing practice** (here, refusal to rent, lying about availability) and the *protected status* (here, race). That linkage is established under various proof theories, disparate treatment, disparate impact, discriminatory statement (§ 3604(c)), and disability-related theories. Here, plaintiffs rely principally on the disparate treatment theory to establish that linkages; specifically, whether Beasley's race (black) was a motivating factor in the adverse housing practice committed that injured Beasley. See e.g., *Ave. 6E Investments, LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir.), cert. denied, 137 S. Ct. 295, 196 L. Ed. 2d 214 (2016) (Under the FHA, a "plaintiff does not have to prove that the discriminatory purpose was the sole purpose of the challenged action, but only that it was a 'motivating factor.'"); Cal. Govt. Code § 12955.8 (Under FEHA, a "person intends to discriminate if . . . race . . . is a motivating factor in committing a discriminatory housing practice even though other factors may have also motivated the practice.")

Because motive and intentional are abstractions that cannot be observed, plaintiffs must discover and present evidence of observable circumstances from which motive or intentional may be inferred. The principal source of that circumstantial evidence arises from evidence of a defendant's housing practices, including their effects, their background and purposes, their implementation, and any substantive or procedure departure from those practices. *See e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *Ave. 6E Investments*, 818 F.3d at 504; *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158-59 (9th Cir. 2013). Before that effect, purpose, implementation, or deviation can be established, the practices themselves must be discovered. That is the information that Requests 11-14 seeks to obtain.

Requests 11-14 (and production of tenant files, discussed below) seeks information, without which, the discriminatory housing practices at issue here cannot be proved under the disparate treatment theory. The granularity of these requests matches the granularity of the unlawful practices to be demonstrated. For example,

plaintiffs' § 3604(a) claim is more exacting than a "refusal to rent."   For each discriminatory housing practice, HUD has issued regulations implementing that provision of the FHA. 42 U.S.C. § 3608 (HUD charged with FHA enforcement); § 3614a (HUD "may make rules . . . to carry out this subchapter [, the FHA].)   Thus, under § 3604(a), HUD regulations explicate the conduct that violates that subsection, including, as applicable here, that the FHA prohibits

• "using different qualification criteria or applications, or . . . rental standards or procedures, such as income standards, application requirements, application fees, credit analysis or . . . rental approval procedures or other requirements, because of race," 24 C.F.R. § 100.60(b)(4); or,

• "discouraging any person from inspecting, . . .  or renting a dwelling because of race," 24 C.F.R. § 100.70(c)(1); or,

• steering a person to a dwelling because of race, 24 C.F.R. §§ 100.70(a), 100.70(c)(4); or,

• "denying or delaying the processing of an application made by a renter . . . . because of race," 24 C.F.R. § 100.70(d)(3); or

• "failing to process an offer for the . . . rental of a dwelling . . .because of race," 24 C.F.R. § 100.65(b)(3).

HUD regulations also explicate the conduct prohibited under § 3604(d), including as applicable here:

• "indicating through words or conduct that a dwelling which is available for . . . rental has been . . . rented because of race," 24 C.F.R. § 100.80(b)(1); or,

• "limiting information, by word or conduct, regarding suitably priced dwellings available for inspection . . . or rental, because of race," 24 C.F.R. § 100.80(b)(4); or,

• "providing false or inaccurate information regarding the availability of

a dwelling for . . . rental to any person, including testers, regardless of whether such person is actually seeking housing, because of race," 24 C.F.R. § 100.80(b)(5).

The Supreme Court acknowledges, consistent with Chevron deference, that these HUD regulations are entitled to deference. *Meyer v. Holley*, 537 U.S. 280, 287 (2003); accord Govt. Code § 12955.6 (FEHA follows HUD regulations). The granularity of the information requested by plaintiffs in these request is consistent with factual granularity needed to prove that defendants committed one or more discriminatory housing practices in violation of the FHA and FEHA.

Next, documents regarding training completed or provided to the owners, operators, and managers of the Villa La Paz reflects their knowledge of fair housing laws, which informs their intentionality and therefore is relevant to show discrimination under the disparate treatment theory.

Finally, documents reflecting the existence, type or brand of property management software used by defendants to track data about the operation of the Villa La Paz apartment is necessary to establish the actual policies and practices implemented by defendants.

**What's missing and should be ordered produced?** Defendants have produced nothing in response to these requests, and should be ordered to full comply with these requests. This information will establish the basic housing practices implemented by defendants, which in turn provides the foundation for proving commission of a discriminatory housing practice. These records and ESI bear not only on defendants' intent (training records) and the availability of ESI regarding their treatment of tenants (property management program), but bear directly on disputed issues to be resolved, including the determination of the availability of dwellings for rent, the disclosure of information regarding dwelling available for rent, the condition of dwellings deemed rent-ready, the application of conditions and requirements to qualify for rental of dwelling. Defendants have produced none of this

necessary information.

**C.   Defendants' Position**

Defendants have produced all documents responsive to the requests within their possession, custody and control, most of which were obtained from Pro Management. The documents include Valerio's personnel and manager's files, including the Employee Handbook, employment contract, and other documents which delineate the company policies regarding discrimination, etc. (Request No. 10). (Leech decl., ¶ 13). Defendants have produced hundreds of pages of the tenant files, which include applications, credit checks, rental agreements, Employee Handbook, etc. (Request No. 11-13), Defendants have no documents responsive to Request No. 14. (Leech decl., ¶13). Defendants cannot produce documents that do not exist.

3.   Ownership and control

**A.   Discovery Requests at Issue**

**Request No. 15:**

15.   A complete copy of records sufficient to establish each individual who has any ownership interest or control of the Villa La Paz apartments at any time since January 1, 2017, including:

[a]   for any corporation, the article of incorporation, amendments, bylaw and minutes reflecting ownership or control;

[b]   for any LLC, management agreements, amendments, contributions and distributions by members; and,

[c]   any trust documents holding any interests to the property.

**Response to Request 15 (served July 11, 2022):**  Same response as to Request 10 above.

**Response to Re-Served Request 15 (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney

client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party has complied with defendants' Initial Disclosures.

**B.    Plaintiffs' Position**

Request No. 15 seeks information about the ownership and control of the Villa La Paz apartments, the rental dwelling at the center of this action.  Ownership and control are the facts from which liability for discriminatory housing practices may be established under various agency or tort theories.  Direct or vicarious liability under the FHA is determined be traditional agency and tort principles. *Meyer v. Holley*, 537 U.S. at 285-87.  As applied in FHA cases, those theories have been codified by HUD:

> **(a) Direct liability.**  (1) A person is directly liable for:  (i) The person's own conduct that results in a discriminatory housing practice.  (ii) Failing to take prompt action to correct and end a discriminatory housing practice by that person's employee or agent, where the person knew or should have known of the discriminatory conduct.  (iii) Failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. The power to take prompt action to correct and end a discriminatory housing practice by a third-party depends upon the extent of the person's control or any other legal responsibility the person may have with respect to the conduct of such third-party.
>
> . . . .

**(b) Vicarious liability**. A person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law.

24 C.F.R. § 100.7.

Defendants contend that plaintiffs have improperly sued three of the four defendants named in the original complaint, property owner Group XIII Properties LP, the LP's general partner, Group XIII Properties Inc., the corporation's president and CEO, Mike Nijjar.  Defendants identified whom they assert are the proper defendants, property owner DHA Opportunity 1 LP, its general partner, DHA Opportunity Inc., and DHA's president Daljt Kler (defendant Mike Nijjar's sister) – whom defendants claim are the sole owners and operators of the Villa La Paz apartments

Plaintiffs contend that each defendants is liable, directly or vicariously and specifically that Nijjar remains in control of the entities that own and operate the Villa La Paz apartments and that transfer of that property was not an arms-length, bona fide transfer of ownership.  Defendants disagree.  This factual dispute may be resolved by the production of records and ESI in defendants' possession that Request 15 demands.  If, as plaintiffs contend, Nijjar retained control over the Villa La Paz apartment, then he may be found directly or vicariously liable for the discriminatory housing practices committed.  This dispute cannot be resolved without access to the records solely in the possession of defendants.

**What's missing and should be ordered produced?**  Defendants selectively produced some, but not all of the deeds, reflecting a quitclaim of the property from Nijjar and his companies to Kler and her companies.  That quitclaim was executed two years before it was actually recorded and was not recorded until after the filing of this lawsuit, raising the inference that the transaction was not an arm's length one but merely a shuffling of assets between related persons and entities.  To resolve this

dispute, the corporate records demanded under Request 15 should be ordered produced.

### C.   Defendants' Position

Defendants produced the documents responsive to the request, specifically the two deeds (Leech decl., Ex.'s 35 and 36). The  deed (Ex. 36) was delivered to DHA Opportunity 1, LP, therefore the title transferred to DHA Opportunity 1, LP on January 2, 2019.

Generally, the corporation, not its officers, directors or owners, is liable for the discriminatory housing practices committed by the corporation's employees and agents. (Corp. Code § 317; *Meyer v. Holley*, 537 U.S. 280, 290-291, 123 S. Ct. 824, 831, 154 L. Ed. 2d 753 (2003); *Frances T. v. Village Green Owners Assn.*, 42 Cal. 3d 490, 503-504, 229 Cal. Rptr. 456, 463, 723 P.2d 573, 59 A.L.R.4th 447 (1986).) Corporate officers generally are not vicariously liable for the acts of the corporation's agents. (*Meyer*, *supra*; *Frances T. v. Village Green Owners Assoc.*, *supra*, 42 Cal. 3d at 503-504, 229 Cal.Rptr. at 463.)

Plaintiffs incorrectly argue that Defendants identified whom they assert are the proper defendants, property owner DHA Opportunity 1 LP, its general partner, DHA Opportunity Inc., and DHA's president Daljt Kler (defendant Mike Nijjar's sister) - whom defendants claim are the sole owners and operators of the Villa La Paz apartments. This is false. Defendants have never asserted that DHA Opportunity Inc., and DHA's president Daljt Kler are the owners of the Apartments or are proper defendants. Defendants have always taken the position that DHA Opportunity 1 LP was the owner of the Apartments from January 2, 2019, to the present. Defendants do not dispute that Daljt Kler is the president of DHA Opportunity 1 Inc. Per the Statement of Information filed with the California Secretary of State on February 3, 2020, the officers of DHA Opportunity 1 Inc., are Daljit Kler and Ryan Liu. Plaintiffs know about this fact since Plaintiff allege in the First Amended Complaint that "According to California Secretary of State filing no. 20-007450, since February 3,

2020, defendant Daljit Kler has been the president of defendant DHA Opportunity 1, Inc." (ECF 32 9). Plaintifffs have the document evidencing the officers and directors of DHA Opportunity 1 Inc., during Beasley's interactions with Valerio. (Leech decl., Ex. 17, Ex. 42).

4. <u>Insurance policy</u>

**A.   Discovery Requests at Issue**

**Request 21:**

Please produce a complete copy of any insurance agreement, including all declaration and policy pages, that may afford any coverage for indemnity or defense to any defendant in this action, even if coverage is disputed by the insurer.

**Response to Request 21 (served July 11, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. These Responding Parties have complied by providing the documents bate stamped 14-20.

**Response to Re-Served Request 20  (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims

or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party has complied with respect to the Initial Disclosures.

### B.    Plaintiffs' Position

As part of initial disclosures, a party is required to produce for inspection and copying "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a)(1)(A)(iv).   The insurance information provided by defendants consists of a declaration page and pages regarding the properties covered.  The actual policy provisions are not attached. (Brancart Dec. ¶ 43.)  On November 7, 2022, plaintiffs' counsel emailed defense counsel and requested a copy of the policy. (Id., Exh. 34.)  Defense counsel has not responded to that email.   (Id.)

### C.    Defendants' Position.

Defendants have produced the insurance policy within its possession, custody and control. Plaintiffs have issued subpoenas to CRC Insurance Services, Inc., seeking the policy, to the extent that such documents exist.

5.    <u>Financial condition</u>

### A.    Discovery Requests at Issue

**Request 22:**

Please produce document sufficient to determine each defendant's current net worth, including, for example, a financial statement, loan application, or net worth statement.

**Response to Request 19 (served July 11, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Seeks the production of financial information and documents that invades Responding Party's privacy rights and is improper per Civil Code § 3295. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Defendants GROUP XIII PROPERTIES LP, GROUP XIII PROPERTIES, INC., and SWARANJIT (MIKE) NIJJAR will soon be filing a motion for summary judgment and will seek a stay on discovery pending the Court ruling on the motion.

**Response to Re-Served Request 20  (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Seeks the production of financial information and documents that invades Responding Party's privacy rights and is improper per Civil Code § 3295. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence).

**B.    Plaintiffs' Position**

Request No. 22 seeks records regarding defendants' financial condition. This information is necessary for establishing defendants' ability to pay damages, including punitive damages, an award of which is expressly authorized by the Fair Housing Act. 42 U.S.C. §3613(c). It is well-established that a defendant's income, assets, and net worth are relevant to the issue of punitive damages. As such, plaintiffs' request for the same here is appropriate. *See, e.g., City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-271 (1981) (defendants' net worth is a relevant

factor in the determination of the amount of punitive damages to be awarded); *accord, White v. Ford Motor*, 500 F.3d 963, 977 (9th Cir. 2007) ("As is clear from *State Farm [v. Campbell]* itself, the jury's use of wealth in imposing punitive damages is both lawful and appropriate"). Indeed, in a fair housing case, a defendant's size and financial condition must be considered in determining the size of a punitive damages award. *See, e.g., Phillips v. Hunter Trails Community Ass'n*, 685 F.2d 184, 191 (7th Cir. 1982).

Plaintiffs are not required to establish liability or make out a prima facie showing of entitlement to punitive damages to justify discovery of financial information. *Charles O. Bradley Trust v. Zenith Capital LLC*, 2005 WL 1030218 (N.D.Cal, 2005) ("This Court concludes that it is not appropriate to delay discovery on punitive damages because, as suggested by one court, such information is valuable to both parties in making a realistic appraisal of the case and may lead to settlement and avoid protracted litigation."). In *Zuniga v. Western Apartments*, 2014 WL 2599919 (C.D.Cal., 2014), another fair housing case, the court ordered the full disclosure of net worth information of a defendant landlord. *Id.* at 29-30. *See also Sandoval v. Lagoon Associates, LLC*, 2016 WL 9113994 (C.D.Cal., 2016). Accordingly, plaintiffs' request of this information is relevant and proportional here.

## C.   Defendants' Position.

As set forth above, the owner of the Apartments was DHA Opportunity 1 LP (ECF 32 ¶ 8) None of the other defendants owned the Apartments when Beasley interacted with Valerio. Pro Management, a non-party, was the company that employed Valerio and contracted with DHA Opportunity 1 LP to manage the Apartments.

Swaranjit (Mike) Nijjar, Group VIII Properties LP, Group VIII Properties Inc., and Daljit Kler did not own or manage the Apartments, and did not employ Valerio or contract with Pro Management to manage the Apartments. Said defendants net worth should not be discoverable. Defendants DHA Opportunity 1 LP and DHA

Opportunity 1 Inc., will produce documents evidencing their net worth on condition that the documents are produced and marked "CONFIDENTIAL AND FOR ATTORNEY EYES ONLY", and that the protective order (ECF 21) be amended, or a new protective order issued to provide that documents produced and marked "CONFIDENTIAL AND FOR ATTORNEY EYES ONLY" may not be disclosed, including the information contained therein, to anybody other than the Attorney of record.

Since the other Defendants have not owned or managed the Apartments, and had no interaction with Beasley, the request for their financial information should be denied.  Said Defendants will be filing a motion for summary judgment and partial summary judgment (with respect to punitive damages).

6.   Requests for which defendants agreed to produce documents and ESI

**A.   Discovery Requests at Issue**

*Persons with Knowledge*

**Request No. 7:**

Please produce any writing or statement by any person – disclosed or identified by any party as a potential witness or person with knowledge – regarding any facts relevant to any claim or defenses alleged in this action.

**Response to Request 7 (served July 11, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded.

These Responding Parties are unable to comply because the documents are not in the possession custody or control of the documents responsive to the request, other than the pleadings on file herein and the deed in which title to the Subject Property was transferred to DHA OPPORTUNITY 1, LP, on or about January 2, 2019. On information and belief, Pro Management Company Inc., the former employer of ELISA VALERIO, and DHA OPPORTUNITY 1, LP, who contracted with Pro Management Company Inc., to provide property management services for DHA OPPORTUNITY 1, LP at the Subject Property may have documents within its possession custody or control responsive to the request. Note that as of the date of this response, DHA OPPORTUNITY 1, LP has provided approximately 1491 pages of documents with its Initial Disclosures, some of which may be responsive to the request.

**Response to Re-Served Request 7  (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party has complied with respect to the Initial Disclosures **and will also produce additional documents**.  [Emphasis added].

**Request No. 16:**

A complete copy of any ESI in a property management program regarding any tenant or who rented or occupied a dwelling unit at the Villa La Paz apartments at any time since January 1, 2017.

**Response to Request 17 (served July 11, 2022):**  Same as to No. 7 above.

**Response to Re-Served Request 17  (served October 22, 2022):**  Same as to No. 7 above.

*Villa La Paz Tenants*

**Request 16:**

A complete copy of any ESI in a property management program regarding  any tenant or who rented or occupied a dwelling units at the Villa La Paz apartments at any time since January 1, 2017.[3]

**Response to Request 16 (served July 11, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of

---

[3]The same request (for documents from January 1, 2018) was served on Pro Management via subpoena as Category 11 documents in an effort to obtain any documents defendants claimed were not in their custody or control.  (Brancart Dec.; Exh. 23b.)  Pro Management responded as follows:

> Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Seeks the production of financial information and documents that invades Responding Party's privacy rights. Beyond the scope of permissible discovery (not relevant to any party's claim or defense and not proportional to the needs of the case). Does not comply with the notice requirements of Calif. CCP § 1985.3. Housing Rights Center, 3255 Wilshire Blvd. #1150, Los Angeles, CA 90010 is not a party to the instant litigation nor is it counsel of record in the instant litigation, and as such is not entitled to receive the documents. **Without waiving the foregoing objections, this responding party will comply to the extent it does not divulge documentation that is privileged by producing documents subject to the Court's Protective order to Plaintiff's counsel of record with confidential information (i.e., social security and driver's license numbers) redacted.**

(Brancart Dec.; Exh. 23c [emphasis added].)

information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. These Responding Parties are unable to comply because the documents are not in the possession custody or control of the documents responsive to the request, other than the pleadings on file herein and the deed in which title to the Subject Property was transferred to DHA OPPORTUNITY 1, LP, on or about January 2, 2019. On information and belief, Pro Management Company Inc., the former employer of ELISA VALERIO, and DHA OPPORTUNITY 1, LP, who contracted with Pro Management Company Inc., to provide property management services for DHA OPPORTUNITY 1, LP at the Subject Property may have documents within its possession custody or control responsive to the request. Note that as of the date of this response, DHA OPPORTUNITY 1, LP has provided approximately 1491 pages of documents with its Initial Disclosures, some of which may be responsive to the request.

**Response to Re-Served Request 16  (served October 22, 2022):**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. **To**

**the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party will comply, including the documents with defendants' Initial Disclosures.** [Emphasis added].

**Request 17:**

A complete copy of any paper files regarding any tenant or who rented or occupied a dwelling units at the Villa La Paz apartments at any time since January 1, 2017.[4]

**Response to Request 17 (served July 11, 2022):** Same as to No. 16 above.

**Response to Re-Served Request 17 (served October 22, 2022):** Same as to No. 16 above.

*Villa La Paz Prospective Tenants*

**Request 18:**

A complete copy of any document reflecting or regarding person who applied for or inspected a dwelling unit for rent at the Villa La Paz apartments at any time since January 1, 2017.

**Response to Request 18 (served July 11, 2022):** Same as to No. 16 above.

**Response to Re-Served Request 18 (served October 22, 2022):** Same as to No. 16 above.[5]

//

---

[4]The same request (for documents from January 1, 2018) was served on Pro Management via subpoena as Category 14 documents. (Brancart Dec.; Exh. 23b.) Pro Management made the same response as to Category 11 set forth in footnote 3 above.

[5]The same request (for documents from January 1, 2018) was served on Pro Management via subpoena as Category 13 documents. (Brancart Dec.; Exh. 23b.) Pro Management made the same response as to Category 11 set forth in footnote 3 above.

//

*Inez Street Apartments*

**Request 19:**

For the period January 1, 2019 and January 1, 2021, a complete copy of any ESI in a property management program regarding  any tenant or who rented or occupied a dwelling unit at the Inez Street Apartments, the rental dwelling that defendant Elisa Valerio referred plaintiff James Beasley, per the complaint.[6]

**Response to Request 19 (served July 11, 2022):**  Same as to No. 16 above.

**Response to Re-Served Request 19  (served October 22, 2022):**  Same as to No. 16 above.

**Request 20:**

20.    For the period January 1, 2019 and January 1, 2021, a complete copy of any paper files regarding any tenant or who rented or occupied a dwelling unit at the Inez Street Apartments, the rental dwelling that defendant Elisa Valerio referred plaintiff James Beasley, per the complaint.[7]

**Response to Request 20 (served July 11, 2022):**  Same as to No. 16 above.

**Response to Re-Served Request 20  (served October 22, 2022):**  Same as to No. 16 above.

*Communications between Valerio and other Defendants, including*
*their agents, managers, contractors, or vendors*

---

[6]The same request (for documents from January 1, 2018) was served on Pro Management via subpoena as Category 14 documents.  (Brancart Dec.; Exh. 23b.) Pro Management made the same response as to Category 11 set forth in footnote 3 above.

[7]The same request (for documents from January 1, 2018) was served on Pro Management via subpoena as Category 15 documents.  (Brancart Dec.; Exh. 23b.) Pro Management made the same response as to Category 11 set forth in footnote 3 above.

25.   Any file, document or thing, including electronically stored information (ESI) such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent, or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and any other defendant, including any agent, employee, contractor or vendor acting on behalf of any defendant, regarding Valerio's employment, hiring, retention, or termination as a rental property manager.[8]

**Response to Request for Production No. 25:**

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Beyond the scope of permissible discovery (not relevant to a party's claims or defenses nor likely to lead to discovery of admissible evidence). Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. **To the extent defendants have possession, custody and control of documents responsive to the request, this Responding Party will comply, including the**

---

[8]An analogous request was served on Pro Management via subpoena as Category 16 documents, seeking

> Any file, document or thing, including electronically stored information (ESI) such as computer files, emails, faxes, and text (SMS) messages2, reflecting any communication – dated, sent, or received at any time since January 1, 2019 – between defendant Elisa Valerio and Pro Management, Inc., including its principals, officers, employees, agents, contractors, or vendors, regarding Valerio's employment, hiring, retention, or termination as a rental property manager.

(Brancart Dec.; Exh. 28a.)

**documents produced with defendants Initial Disclosures.**[9]  [Emphasis added.]

26.    Any file, document or thing, including electronically stored information (ESI) such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent, or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and any other defendant, including any agent, employee, contractor or vendor acting on behalf of any defendant, regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings located in Hemet or San Jacinto, California.[10]

---

[9]Pro Management responded to the subpoena for Category 16 documents as follows:

Objection: vague and ambiguous. Overbroad. Seeks the production of information and documentation protected from disclosure pursuant to the attorney client communication privilege and attorney work product privilege. Seeks the production of information and documents that invades the privacy of parties and third parties. Seeks the production of financial information and documents that invades Responding Party's privacy rights. Beyond the scope of permissible discovery (not relevant to any party's claim or defense and not proportional to the needs of the case). Does not comply with the notice requirements of Calif. CCP § 1985.3. Housing Rights Center, 3255 Wilshire Blvd. #1150, Los Angeles, CA 90010 is not a party to the instant litigation nor is it counsel of record in the instant litigation, and as such is not entitled to receive the documents. Without waiving the foregoing objections, this responding party responds as follows: A diligent search and reasonable inquiry has been made in an effort to locate the item(s) Demanded. **To the extent Responding Party has possession, custody and control of documents responsive to the request, this Responding Party will comply.** It is noted that Responding Party has produced the documents responsive to the request to counsel for defendants which have been produced with defendants Initial Disclosures. [Emphasis added.]

[10]An analogous request was served on Pro Management via subpoena as Category 17 documents, limited to communications "between defendant Elisa Valerio and Pro Management, Inc., including its principals, officers, employees,

**Response to Request for Production No. 26:**  [Same as Response to No. 25]

27.   Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent, or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and "Elisa V" or "Diana R" or  Darlene Sanchez or Maria Rivera or Cheyenne Prokosh regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings in Hemet or San Jacinto, California [footnotes referencing document Bates numbers omitted].[11]

**Response to Request for Production No. 27:**  [Same as Response to No. 25]

28.   Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages, reflecting the transmission of any information – dated, sent, or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and "Elisa V" or "Diana R" or  Darlene Sanchez or Maria Rivera or Cheyenne Prokosh regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings in Hemet or San Jacinto, California.[12]

**Response to Request for Production No. 28:**  [Same as Response to No. 25]

29.   Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent,

---

agents, contractors, or vendors, regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings located in Hemet or San Jacinto, California."  (Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[11]The same request was served on Pro Management via subpoena as Category 18 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[12]The same request was served on Pro Management via subpoena as Category 19 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and any principal, employee or agent of Pro Management Inc., including Diana Ramirez, Gris Martinez, "Valerie", "Marina", Darlene Sanchez, "Maria", Maria Diaz, Maria Rivera, "Cheyenne", Cheyenne Prokosh, Fredy Trujillo, Makaylin Melendra, "Alyssa", Sherri Wilson, "Darlene", or Veronica Trujillo regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings in Hemet or San Jacinto, California [footnotes referencing document Bates numbers omitted].[13]

**Response to Request for Production No. 29:** [Same as Response to No. 25]

30.     Any file, document or thing, including ESI such as computer files, emails and text (SMS) messages, reflecting the transmission of any information – dated, sent, or received at any time since January 1, 2019 – between **defendant Elisa Valerio** and any principal, employee or agent of Pro Management Inc., including Diana Ramirez, Gris Martinez, "Valerie", "Marina", Darlene Sanchez, "Maria", Maria Diaz, Maria Rivera, "Cheyenne", Cheyenne Prokosh, Fredy Trujillo, Makaylin Melendra, "Alyssa", Sherri Wilson, "Darlene", or Veronica Trujillo regarding the availability, inspection, rental, occupancy, vacation of any rental dwellings in Hemet or San Jacinto, California [footnotes referencing document Bates numbers omitted].[14]

**Response to Request for Production No. 30:** [Same as Response to No. 25]

*Communications between Valerio and Tenants or Prospective Tenants*

31.     Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent,

---

[13]The same request was served on Pro Management via subpoena as Category 20 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[14]The same request was served on Pro Management via subpoena as Category 21 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

or received at any time from January 1, 2019 to May 1, 2021– between **defendant Elisa Valerio** and any rental applicant, prospective tenant, or tenant regarding any rental dwelling located in Hemet or San Jacinto, California [fn:Any rental dwelling located in Hemet or San Jacinto, California, includes *but is not limited to* the rental dwellings located at the following street addresses: 145 N. Inez Street, Hemet; 214 South San Jacinto Street, Hemet; 216 South San Jacinto Street, Hemet; 218 South San Jacinto Street, Hemet; or 675 South San Jacinto, Hemet.].[15]

**Response to Request for Production No. 31:**  [Same as Response to No. 25]

32.    Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– by **defendant Elisa Valerio** regarding any person expressing interest in the rental of a dwelling located in Hemet or San Jacinto, California. [16]

**Response to Request for Production No. 32:**  [Same as Response to No. 25]

33.    Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– by created or received by **defendant Elisa Valerio** regarding any person expressing interest in the rental of a dwelling located in Hemet or San Jacinto, California.

**Response to Request for Production No. 33:**  [Same as Response to No. 25]

34.    Any file, document or thing, including ESI such as computer files,

---

[15]The same request was served on Pro Management via subpoena as Category 22 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[16]The same request was served on Pro Management via subpoena as Category 24 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

emails, faxes, and text (SMS) messages, reflecting any communication – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– by **defendant Elisa Valerio** regarding any rental applicant, prospective tenant, or tenant regarding any rental dwelling located in Hemet or San Jacinto, California.

**Response to Request for Production No. 34:** [Same as Response to No. 25]

35.   Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– by created or received by **defendant Elisa Valerio** regarding any rental applicant, prospective tenant, or tenant regarding any rental dwelling located in Hemet or San Jacinto, California.

**Response to Request for Production No. 35:** [Same as Response to No. 25]

*145 N. Inez Street Apartments*

36.   Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– reflecting or regarding any person who expressed interest in renting, inspecting, or applying for rental of a dwelling located at **145 N. Inez Street.**[17]

**Response to Request for Production No. 36:** [Same as Response to No. 25]

37.   If not produced in response to request 36, then a complete copy of any application and screening documents and files and any database entries recording information about applicants or prospective tenants for rental of a dwelling located at **145 N. Inez Street** during the period between January 1, 2019 and May 1, 2021.[18]

---

[17]The same request was served on Pro Management via subpoena as Category 27 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[18]The same request was served on Pro Management via subpoena as Category 28 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the

**Response to Request for Production No. 37:**  [Same as Response to No. 25]

38.    A complete copy of any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– reflecting or regarding any person who rented a dwelling  the  dwellings located at **145 N. Inez Street.**[19]

**Response to Request for Production No. 38:**  [Same as Response to No. 25]

39.    If not produced in response to request 38, then a complete copy of any tenant file, including application and screening documents and any database entries recording information about tenants who occupied a dwelling located at **145 N. Inez Street** during the period between January 1, 2019 and May 1, 2021.[20]

**Response to Request for Production No. 39:**  [Same as Response to No. 25]

*675 South San Jacinto Street*

52.    If not already produced, any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– reflecting or regarding any person who expressed interest in renting, inspecting, or applying for rental of a dwelling located at 675 South San Jacinto Street.[21]

_____

same objections and response as to Category 16.

[19]The same request was served on Pro Management via subpoena as Category 29 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[20]The same request was served on Pro Management via subpoena as Category 30 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[21]The same request was served on Pro Management via subpoena as Category 43 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

**Response to Request for Production No. 52:** [Same as Response to No. 25]

53.   If not already produced, a complete copy of any application and screening documents and files and any database entries recording information about applicants or prospective tenants for rental of a dwelling located at 675 South San Jacinto Street during the period between January 1, 2019 and May 1, 2021.[22]

**Response to Request for Production No. 53:** [Same as Response to No. 25]

54.   If not already produced, any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time from January 1, 2019 to May 1, 2021– reflecting or regarding any person who rented a dwelling the dwellings located at 675 South San Jacinto Street.[23]

**Response to Request for Production No. 54:** [Same as Response to No. 25]

55.   If not already produced, a complete copy of any tenant file, including application and screening documents and any database entries recording information about tenants who occupied a dwelling located at 675 South San Jacinto Street during the period between January 1, 2019 and May 1, 2021.[24]

**Response to Request for Production No. 55:** [Same as Response to No. 25]

*Rental Application Processing*

---

[22]The same request was served on Pro Management via subpoena as Category 44 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[23]The same request was served on Pro Management via subpoena as Category 45 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

[24]The same request was served on Pro Management via subpoena as Category 46 documents.  (Brancart Dec.; Exh. 28a.)  Pro Management made the same objections and response as to Category 16.

56.   A complete copy of each credit report received from any credit reporting company in connection with screening any application to rent a dwelling located in Hemet or San Jacinto, California, during the period between January 1, 2019 and May 1, 2021.

**Response to Request for Production No. 56:**  [Same as Response to No. 25]

*Tenant Records/Communications Missing from Prior Production by Defendants*

57.    Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time since January 1, 2018 – reflecting or regarding any person who expressed interest in renting, inspecting, or applying for rental of a dwelling located at 675 South San Jacinto Street.

**Response to Request for Production No. 57:**  [Same as Response to No. 25]

58.    Any file, document or thing, including ESI such as computer files, emails, faxes, and text (SMS) messages – dated, sent, or received at any time since January 1, 2018 – reflecting or regarding any tenant who occupied a dwelling located at 675 South San Jacinto Street, including:  Unit 3, Unit 6, Unit 7, Unit 15, Unit 18, Unit 20, Unit 21, Unit 22, Unit 23.

**Response to Request for Production No. 58:**  [Same as Response to No. 25]

*Electronic Data*

59.    A complete copy of any ESI kept, recorded or maintained in any database program, such as a property management program (e.g., Yardi, Buildium, AppFolio, or InHouse program, etc.,etc), regarding the operation of the following rental dwellings for the period since January 1, 2018:

•     145 N. Inez Street, Hemet;

•     214 South San Jacinto Street, Hemet;

•     216 South San Jacinto Street, Hemet;

- •   218 South San Jacinto Street, Hemet; and

- •   675 South San Jacinto, Hemet.

**Response to Request for Production No. 59:**  [Same as Response to No. 25]

### B.   Plaintiffs' Position

Defendants have repeatedly stated that they would produce documents responsive to the requests set forth above.  To the extent defendants claim they have only agreed to provide documents that they themselves possess, that assertion must be rejected.  Defendants cannot claim that they are unable to produce documents which are in the control of their agents, including Pro Management and Elisa Valerio. Rule 34 requires the responding party to produce any documents within the possession, custody or control of its agents.  *See, e.g., In re Ruppert*, 309 F.2d 97 (6th Cir. 1962); *Henderson v. Zurn Industries, Inc.*, 131 F.R.D. 560, 567 (S.D.Ind. 1990); *Wardrip v. Hart*, 934 F.Supp. 1282, 1286 (D.Kan 1996).  Therefore, defendants are obligated to retrieve all responsive documents from their agents and produce them to plaintiffs.  The operational data and communications requested are relevant and proportional for the same reasons as the other discovery sought as explained below.

### C.   Defendants' Position

Pro Management, a non-party, has the documentation responsive to the requests. Pro Management has provided approximately 1491 pages of records responsive to the requests, which have in turn been produced to Plaintiffs. Said documents include all of the files that Valerio worked on including tenant files, rejected tenant files, etc.

## III.  ARGUMENT RE: PROPORTIONALITY OF PLAINTIFFS' REQUESTS FOR PRODUCTION

### A.   Plaintiffs' Position.   These discovery requests are consistent with the need of this case.   As discussed above, the records requested are essential to plaintiffs' ability to demonstrate that defendants committed discriminatory housing

practices under the disparate treatment theory.    Moreover, the issue at stake – addressing housing discrimination – is an "overriding societal priority." *Meyer v. Holley*, 537 U.S. at 280.   The asymmetry between the parties is massive on several dimensions.   Defendants are some of the biggest landlords in the Inland Empire; plaintiffs are a single individual of modest means and a local nonprofit.  Big versus small may not matter much in discovery, but the information asymmetry between the sides clearly does.  Defendants have sole possession and control over the information that plaintiffs need to establish the factual circumstances from which an inference of intentional discrimination may be drawn.   Without the requested discovery, this case will not be a fair fight.

As discussed, plaintiffs offered to shoulder the burden of inspecting and copying the paper tenant files – a proposal rejected by defendants.   Moreover, plaintiffs' ESI requests should pose no burden on defendants: The request ESI can be copied onto a flash drive by an administrative assistant who drags and drops ESI from one storage system (file server) to another (flash drive).   The property management data is readily accessible and easily copied without delay and should be produced as exported data in native format transferred to an FTP site or flash drive.  *See Textron Fin. Corp. v. Eddy's Trailer Sales, Inc.*, No. CV 08-2289 (JFB) (AKT), 2009 U.S. Dist. LEXIS 60065, at *2 (E.D.N.Y. July 10, 2009) (finding that ESI is accessible when it is stored on existing servers); (citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003) (explaining that online data stored on an active server is "accessible."); *Quail Cruises Ship Mgmt. v. Agencia De Viagens Cvc Tur Limitada*, No. 09-23248-CIV-HUCK/B, 2012 U.S. Dist. LEXIS 198390, at *7 (S.D. Fla. Feb. 14, 2012) (holding that ESI stored on the cloud is "readily accessible"); *Starbucks Corp. v. ADT Sec. Servs., Inc.*, No. 08-cv-900-JCC, 2009 WL 4730798, at *6 (W.D. Wash. Apr. 30, 2009) (compelling production despite declarations complaining about the effort required to collect and review the requested ESI, because the ESI was relevant and accessible).  Accordingly, burden is not a basis for

-54-

denying this discovery.

Only by obtaining the documents regarding the key percipient witnesses in this case that defendants created or controlled reflecting their rental practices and interactions can plaintiffs elicit admissions from defendants and rebut defenses. The information requested is not only relevant, but also admissible under Fed. R. Evid. 404(b), 406, 801(d)(2).

### B.    Defendants' Position.

Plaintiffs were advised that Defendants (and Pro Management) do not retain hard copies of documents. All documents are scanned in electronic PDF format and the hard copies are shredded. The documents that have been produced are in the electronic format that Defendants (and Pro Management) retain them in. There are simply no hard copies of tenant files.

The tenant files contain sensitive information (social security and driver's license numbers, financial information, credit check information etc., all of which need to be property redacted. The files also need to be marked confidential. The files produced to Plaintiffs and the additional documents to be produced that have been produced by Pro Management are in the electronic (pdf) format that Defendants (and Pro Management) retain them, except obviously for the redaction of sensitive information.

Plaintiffs suggest that the "request ESI can be copied onto a flash drive by an administrative assistant who drags and drops ESI from one storage system (file server) to another (flash drive)". That is exactly what Defendants (and Pro Management) have done, again except for the redacting of sensitive information and marking the documents confidential.

## IV.    ARGUMENT RE: DEFENDANTS' PRIVACY OBJECTIONS

### A.    Plaintiffs' Position.

Defendants interposed third-party privacy objections to production of

information regarding their rental applicants and tenants. That objection is not well taken and any valid privacy concern may be addressed under the Protective Order (ECF 21). *See Prado v. Wal-Mart Stores, Inc.*, 2018 WL 3487057, at *4 (C.D.Cal., 2018) (granting motion to compel and ruling that "any privacy issues can be mitigated by the Stipulated Protective Order already issued").

Federal common law governs adjudication of privacy objections in federal fair housing case, *United States v. Zolin*, 491 U.S. 554, 562 (1989), and it is dubious that the federal common law recognizes a right to privacy that trumps discovery under the Federal Rules of Civil Procedure. For sure, "'there is no absolute privilege for trade secrets and similar confidential information.'" *Fed. Open Mkt. Comm. Of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1970) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043, p. 300 (1970)). Federal courts "routinely" order production of third-party information in civil rights cases. *Ceramic Corp. of Amer. v. Inka Mar. Corp. Inc.*, 163 F.R.D. 584, 589 (C.D. Cal. 1995) (citing cases requiring production of non-party medical information, tenure and personnel files, and evaluations of non-party supervisor); *see also EEOC v. Ford Motor Credit Co* ., 26 F.3d 44, 47 (6th Cir. 1994) ("Comparative information . . . is absolutely essential to a determination of discrimination.") (internal quotation marks omitted). This is especially so in federal fair housing cases. *See, e.g., Marable v. H. Walker & Assocs*., 644 F.2d 390, 396 (5th Cir. 1981) (evidence consisted of tenant applications and credit reports); *Smith v. Sol D. Adler Realty Co.*, 436 F.2d 344, 347 (7th Cir. 1971) (plaintiffs allowed to inspect tenant applications); *see also Whyte v. Alston*, 2011 WL 13107428, at *3-4 (S.D. Fla. July 7, 2011) (despite defendants' relevance, burdensomeness, and overbreadth objections, court granted motion to compel information regarding former tenants in a case pleading a pattern and practice of discrimination against families with children, noting "[a] pattern and practice of discrimination may be proved by evidence of past practices continuing into the present"); *Jones v. Travelers Cas. Ins. Company of America*, Case No. 5:13-cv-

02390-LHK-PSG, 2014 WL 3593222, *3 & n.29 (N.D. Cal. Jul. 18, 2014) (in fair housing action brought by individual insureds, overruling a defendant's third-party privacy right objection and ordering production of files reflecting insurer's treatment of similarly situated insureds).

California state courts follow the same analysis in state fair housing cases despite California's unique privacy protections:

> [R]ental information about other applicants and selected tenants is reasonably relevant to the discrimination investigation…Claims of differential treatment have been held to be essential to proving housing discrimination based on race. Documents sought would assist petitioner in determining whether [landlord]'s rental practices violate FEHA. The Department could determine the racial makeup and marital status of [landlord]'s renters, as well as that of applicants who were unsuccessful in renting from [landlord].

*Department of Fair Employment & Housing v. Superior Court*, 99 Cal. App. 4th 896, 902 ( 2002).

## B.      Defendants' Position.

Plaintiffs fail to articulate what information they need that is objected to per third parties privacy concerns. Defendants have produced third party tenant and prospective tenant files and have redacted social security and driver's license numbers and financial information. Plaintiffs fail to argue why they need the social security and driver's license numbers and the financial information (income statements, tax withholding, bank account information, etc.) for this case. Plaintiffs allege discrimination based on race, nothing more. Third party's social security and driver's license numbers, financial information, taxes withheld, tax returns, and other sensitive information is not relevant to Plaintiff's claims, and the third party's sensitive information should not be produced to Plaintiffs in order to protect the third party's privacy rights.

* * *

Dated:  January 19, 2023.

Respectfully submitted,

BRANCART & BRANCART

*/s/ Christopher Brancart*
Christopher Brancart (SBN
128475)
cbrancart@brancart.com
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

LAW OFFICE OF D. WAYNE LEECH, A
PROFESSIONAL CORPORATION

*/s/ Wayne Leech*
Wayne Leech (SBN 97676)
wayne@leechlaw.com
11001 Main Street, Suite 200
El Monte, CA 91731
Tel:   (626) 443-0061
Fax:  (626) 443-1165

Attorneys for Defendants