BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  *cbrancart@brancart.com*
  Elizabeth Brancart (SBN 122092)
  *ebrancart@brancart.com*
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FAIR HOUSING  COUNCIL OF RIVERSIDE COUNTY, INC., and JAMES BEASLEY,** )<br><br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>)<br>**vs.** )<br>)<br>**GROUP XIII PROPERTIES LP,** )<br>**GROUP XIII PROPERTIES, INC.,** )<br>**SWARANJIT (MIKE)  NIJJAR,** )<br>**ELISA VALERIO, DHA** )<br>**OPPORTUNITY 1, LP, DHA** )<br>**OPPORTUNITY 1, INC., and** )<br>**DALJIT KLER** )<br>)<br>**Defendants.** )<br>) | **Case 5:21-cv-00941-JGB-KK**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS NIJJAR AND KLER'S EX PARTE APPLICATION FOR PROTECTIVE ORDER STAYING DISCOVERY ORDER; DECLARATION OF ELIZABETH BRANCART; EXHIBITS**<br><br>Discovery Cutoff:  March 27, 2023<br>Pretrial Conference:  August 18, 2023<br>Trial Date:  September 19, 2023 |

//

//

//

//

//

//

//

1

# TABLE OF CONTENTS

2  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4  THE DISCOVERY ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6          A.     The ex parte application should be denied as untimely. . . . . . . . . . . . 8

7          B.     Even if considered on the merits, the ex parte application

8                 should be denied. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

9                 1. Defendants' anticipated motion to bifurcate will not moot

10                the need for net worth discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11                2. Defendants' anticipated summary judgment motion

12                does not justify staying the discovery order. . . . . . . . . . . . . . . . . . . 12

13                3.     Defendants cannot establish good cause to grant the stay

14                based on harm to their privacy interests. . . . . . . . . . . . . . . . . . . . . . 16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Alaska Cargo Transportation., Inc. v. Alaska Railroad Corp.,*
　　5 F.3d 378 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*American Rock Salt Company., LLC v. Norfolk Southern Corporation,*
　　371 F. Supp. 2d 358 (W.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dayco Production., Incorporated v. Walker,*
　　142 F.R.D. 450 (S.D. Ohio 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Echostar Satellite LLC v. Viewtech, Inc.,*
2009 WL 10672432 (S.D. Cal. July 11, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Green v. Monarch Recovery Management., Inc.,*
　　997 F. Supp. 2d 932 (S.D. Ind. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Greystone Const., Inc. v. National Fire and Marine Insur. Co.,*
　　2008 WL 795815 (D. Colo. Mar. 21, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Holliman v. Redman Development Corp.,* 61 F.R.D. 488 (D.S.C. 1973) . . . . . . 11

*In re Lernout and Hauspie Sec. Litigation,* 219 F.R.D. 28 (D. Mass 2004) . . . . . 8

*Kolstad v. American Dental Association,* 527 U.S. 526 (1999) . . . . . . . . . . . . . . 16

*Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,*
　　130 F.R.D. 149 (D. Kan. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nikon Corp. v. GlobalFoundries U.S., Inc.,*
　　2017 WL 4865549 (N.D. Cal. Oct. 26, 2017) . . . . . . . . . . . . . . . . . . . . . . . 17

*Oakes v. Halvorsen Marine Limited,* 179 F.R.D. 281 (C.D. Cal. 1998) . . . . . . . . 7

*Sanzaro v. Ardiente Homeowners Association, LLC,*
　　364 F. Supp. 3d (D. Nev. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Skellerup Indus. Limited v. City of Los Angeles,*
　　163 F.R.D. 598 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Street Joseph Hospital v. INA Underwriters Insur. Co.,*
　　117 F.R.D. 24 (D. Me. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wood v. McEwen,* 644 F.2d 797 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes and Rules**

Fair Housing Act, 42 U.S.C. §§ 3601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

Fed. R. Civ. P. 26(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 72(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**INTRODUCTION**

Plaintiffs Fair Housing Council of Riverside, Inc. and James Beasley oppose the ex parte application filed by defendants Saranjit (Mike) Nijjar and Daljit Kler, for a protective order staying Magistrate Judge Kato's February 6, 2023 discovery order directing them to respond to plaintiffs' request for production number 22 on net worth.  (ECF 45.)  Defendants claim they need a stay to allow them time to file a motion to bifurcate the issue of Nijjar and Kler's liability from punitive damages and a motion for summary judgment regarding plaintiffs' punitive damages claims against Nijjar and Kler which, they assert, will render discovery of their net worth moot.  (Id.)  The application should be denied because defendants cannot establish good cause for staying Magistrate Judge Kato's discovery order.  The motion is procedurally untimely as the time to comply with the discovery order had already expired before defendants' newly added counsel filed the ex parte application and existing counsel had already responded on behalf of all defendants stating that they would comply with the discovery order.  Nor can defendants justify issuance of a stay on the merits and the "attorneys' eyes only" protective order already in place guarantees the confidentiality of defendants' financial information.

**BACKGROUND**

This fair housing action arises out of defendants' ownership and operation of the Villa La Paz apartments located at 675 South San Jacinto Street in Hemet, one of dozens of apartment buildings owned, controlled, and operated by defendants Swaranjit (Mike) Nijjar and his sister Daljit Kler and their related limited partnerships and corporations in Riverside County and the Southland. James Beasley, a Black prospective tenant, and the Fair Housing Council of Riverside, the county's nonprofit fair housing agency, filed suit on June 2, 2021, alleging that Villa La Paz property owner of record Group XIII Properties LP, its general partner, Group XIII Properties Inc., the corporation's president and CEO, Mike Nijjar, and the apartment manager, Elisa Valerio, violated the federal Fair

1    Housing Act, 42 U.S.C. §§ 3601 *et seq.* and related state laws by discriminating on
2    the basis of race.  (ECF 1.)

3          On August 6, 2021, during the early meeting of counsel, defendants stated
4    that Group XIII Properties LP no longer owned the property but had transferred it
5    2019 to DHA Opportunity 1, LP – an entity purportedly controlled by Daljit Kler.
6    Defendants did not provide any documentation supporting that assertion.  (See
7    ECF 38-2 at ¶¶ 5-6.)  Once defendants provided a copy of a deed reflecting a
8    transfer, plaintiffs promptly added the DHA Opportunity entities and Daljit Kler as
9    defendants.  (ECF 32.)

10                          **THE DISCOVERY ORDER**

11         In her order issued February 6, 2023, Magistrate Judge Kato recounted
12   plaintiffs' repeated efforts to obtain discovery in this case.  (See ECF 41 at 2-4.)
13   Plaintiffs served Request for Production No. 22 seeking net worth documents on
14   defendant Nijjar (and others) over a year ago on December 27, 2021, and re-served
15   the request on both defendants Nijjar and Kler (and others) on September 28,
16   2022.  (See ECF 38-7 (request to Nijjar) and ECF 38-7 [request to Nijjar and
17   Kler].)  Request No. 22 asked defendants to "[p]lease produce document[s]
18   sufficient to determine each defendant's current net worth, including, for example,
19   a financial statement, loan application, or net worth statement."  (See ECF 41 at
20   11; ECF 38-7 at p. 8.)  In her discovery order, Magistrate Judge Kato overruled
21   defendants' objections to providing that discovery:

22         Plaintiffs argue Defendants' net worth is relevant to the issue of
23         punitive damages. [ECF 38-1] at 36-37.  First, Defendants have
24         agreed to produce documents showing the net worth of defendants
25         DHA Opportunity 1, LP and DHA Opportunity 1, Inc. subject to an
26         attorney eyes only protective order. Id. at 37-38. However, it does not
27         appear Defendants have produced even those documents at this time,
28         see dkt. 39 at 5, and an Amended Protective Order including attorney

1    eyes only protections was approved on December 19, 2022, see dkt.
2    35. Next, Defendants argue the other Defendants [i.e. Nijjar and Kler]
3    should not be required to provide financial information because they
4    "have not owned or managed the Apartments, and had no interaction
5    with [Plaintiff] Beasley." JS at 28. In addition, Defendants argue they
6    should not be required to provide financial information because they
7    "will be filing a motion for summary judgment and partial summary
8    judgment (with respect to punitive damages)." Id. However, no such
9    motion has been filed at this time. Therefore, the issue of punitive
10   damages remains relevant to Plaintiffs' claims. FED. R. CIV. P.
11   26(b). Moreover, the protective order in effect will accommodate
12   Plaintiffs' need for the information while protecting Defendants'
13   privacy. Finally, "[n]othing in [California Civil Code] § 3295 creates
14   a privilege for discovery purposes." *Oakes v. Halvorsen Marine Ltd.*,
15   179 F.R.D. 281, 285 (C.D. Cal. 1998).  Therefore, Defendants'
16   relevance and privacy objections are OVERRULED.

17   (ECF 41 at 11.)  The Court ordered defendants to serve supplemental responses to
18   Request No. 22 (and others) within 10 days from the date of the order.  (Id. at 13.)
19   Under that order, defendants' responses were due on Thursday, February 16, 2023.
20       On February 16, on behalf of all defendants, defense counsel D. Wayne
21   Leech served the supplemental responses ordered by the Court.  (Declaration of
22   Elizabeth Brancart hereto ["Brancart Dec."], Exh. 1.)  With respect to Request No.
23   22, defendants stated "Per the Court's 2-6-2023 Order (ECF 41), Defendants will
24   comply." (Id. at p. 18.)  The email accompanying the supplement responses stated
25   that the "documents will be sent under separate cover."  (Brancart Dec., Exh. 2.)
26       According to the ex parte application, defendants Mike Nijjar and Daljit
27   Kler retained Larson LLP as additional (not separate) counsel on the following
28   day, February 17.  (ECF 45 at 5 n.2; ECF 45-1, ¶1.)  New counsel filed their

1   notices of appearance that day.  (ECF 42-44.)  On Sunday, February 19, new

2   defense counsel contacted plaintiffs' counsel to meet and confer about their

3   intended ex parte application to stay the discovery order, although the time had

4   passed to comply and their co-counsel had already responded that all defendants

5   would comply.

6        Later that day, defense counsel D. Wayne Leech emailed documents

7   responsive to the Court's order and stated that he was sending hard copies of

8   financial records regarding the four entity defendants via FedEx.  (Brancart Dec. ¶

9   3, Exh. 3.)  Those documents were evidently mailed to plaintiffs' counsel's post

10  office box on Tuesday, February 21.  (Brancart Dec. ¶ 3.)

11       After conferring with plaintiffs' counsel, defendants Nijjar and Kler filed

12  their ex parte application on Monday, February 20.  (ECF 45.)  The Court ordered

13  plaintiffs to respond by February 23.  (ECF 46.)

14                          **ARGUMENT**

15   **A.    The ex parte application should be denied as untimely.**

16       "Manifestly, filing the motion for a stay after the date set for compliance

17  comes too late."  *In re Lernout & Hauspie Sec. Litig.*, 219 F.R.D. 28, 31 (D. Mass

18  2004), report and recommendation adopted by 2004 WL 3217802 (D. Mass.

19  2004).  Defendants' ex parte application for a stay is untimely because it was filed

20  after the deadline for compliance and after their counsel had stated that *all*

21  defendants would comply with Magistrate Judge Kato's discovery order.  In these

22  circumstances, "it is improper (and, indeed probably contumacious) to fail to

23  comply with the Order and not to seek a stay at a time reasonably in advance of

24  the time for compliance."  *Lernout*, 219 F.R.D. at 30 (denying request for stay

25  sought one day after expiration of date for compliance with magistrate judge's

26  order); *see also Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. CIV-

27  A-07-CV-00066-MSK-CBS, 2008 WL 795815, at *4 (D. Colo. Mar. 21, 2008)

28  (denying motion for stay of discovery order after date for compliance had passed).

1    The deadline for compliance with Magistrate Judge Kato's discovery

2    ordered expired a week ago on February 16.  (ECF 41 at 13.)  Pursuant to CDLR

3    72-2.2, regardless of whether a motion for review has been filed, a magistrate

4    judge's nondispositive ruling "remains in effect unless the ruling is stayed or

5    modified by the Magistrate Judge or the District Judge."  Here, defendants filed no

6    objections within 14 days pursuant to Fed. R. Civ. P. 72(a) and concede that there

7    is no basis for claiming error in the discovery order.  Instead, they base their need

8    for a stay on an assertion that they require time to bring and litigate procedural and

9    substantive motions that will "moot" the need for the discovery.  (ECF 45 at 4.)

10   They do not explain why those motions could not have been brought earlier or

11   why they only became urgent after the time to comply with Magistrate Judge

12   Kato's order expired.

13   Accordingly, defendants Nijjar and Kler have been in violation of

14   Magistrate Judge Kato's order since the deadline for compliance expired last

15   Thursday.  Merely filing a motion for a stay – here for a *retroactive* stay – "does

16   not excuse the moving party from fully complying with the order . . . until a court

17   grants a stay and relieves the party of its obligation to comply." *Am. Rock Salt Co.,*

18   *LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005); *PlayUp, Inc.*

19   *v. Mintas*, __ F. Supp. 3d __, No. 2:21CV-02129-GMN-NJK, 2022 WL 10967692,

20   at *2 (D. Nev. Oct. 18, 2022).  As another district court has observed regarding a

21   local rule virtually identical to CDLR 72-2.2, "nothing in [the local rule], the Civil

22   Rules generally, or the Magistrate's Act suggests Defendants may act as if they

23   have obtained a stay when in fact all they have done is to apply for a stay or to

24   treat [the local rule] as not applicable to their situation when it is by its very terms

25   expressly applicable – it contains no exception for nondispositive matters which

26   the objecting party considers very important."  *Dayco Prod., Inc. v. Walker*, 142

27   F.R.D. 450, 453-54 (S.D. Ohio 1992) (referring to district court local rule virtually

28   identical to CDLR 72-2.2).

1    Based on the untimeliness of defendants' request, as well as their counsel's
2    response stating that they *would* comply with the discovery order, the Court
3    should deny the ex parte application and refuse to stay the discovery order.

4    **B.    Even if considered on the merits, the ex parte application should**
5    **be denied.**

6    On the merits, the Court should reject defendants' argument that their
7    anticipated motions to bifurcate and for summary judgment provide good cause for
8    and justify staying Magistrate Judge Kato's discovery order.  There is no good
9    cause for issuing a stay in anticipation of a bifurcation motion because a
10   bifurcation motion relates to the order of evidence, not the need for discovery.  As
11   for defendants' anticipated summary judgment motion, while courts may stay
12   discovery awaiting the outcome of a *pending* dispositive motion, there is no
13   justification for staying a final discovery order while awaiting the outcome of an
14   *anticipated* dispositive motion, especially after the time for complying with that
15   discovery order has expired.

16   **1.  Defendants' anticipated motion to bifurcate will not moot the**
17   **need for net worth discovery.**

18   Defendants cannot establish good cause for a retroactive stay of the
19   discovery order based on their anticipated bifurcation motion.  Defendant Nijjar
20   has been a named defendant since plaintiffs filed this case in June 2021.  (ECF 1.)
21   Defendant Kler has been a named defendant since plaintiffs filed their first
22   amended complaint almost a year ago in March 2022.  (ECF 32.)  Both the
23   complaint and amended complaint sought punitive damages against all defendants.
24   At no time prior to this past Sunday did defendants ever mention a need or a plan
25   to seek bifurcation.  No reference to bifurcation or phasing discovery appears in
26   the Joint Rule 26(f) report.  (ECF 19.)  Nor are any such issues mentioned in
27   defendants' portion of the Joint Rule 37-2 Stipulation filed in connection with
28   plaintiffs' motion to compel.  (ECF 38-1 at 37-38.)  Faced with a parallel situation

in *Allman v. Smith*, No. 1:12-CV-00568-TWP-DML, 2013 WL 12484843, at *2 (S.D. Ind. May 1, 2013), the district court refused to stay discovery to allow the parties to litigate the issue of qualified immunity.  Where no reference to a stay of discovery or bifurcation of issues had been mentioned in case management plan, the court found that "[t]he defendants' change of counsel and new litigation strategy is not sufficient, in the court's view, to alter the discovery plan under the case management order."  *Allman* at *2.

Even if it were appropriate to bifurcate the trial in order to keep potentially prejudicial knowledge of defendants' net worth from the jury until after liability is established, that is not a basis for staying the *discovery* of net worth.  Net worth information is not only relevant to plaintiffs' substantive claims, but its disclosure during discovery assists the parties in making "a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation."  *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990); *see also Green v. Monarch Recovery Mgmt., Inc.*, 997 F. Supp. 2d 932, 935 (S.D. Ind. 2014); *Contreras v. KV Trucking, Inc.*, No. 4:04-CV-369, 2006 WL 8441119, at *2 (E.D. Tex. Feb. 9, 2006); *Holliman v. Redman Dev. Corp.*, 61 F.R.D. 488, 491 (D.S.C. 1973).

Moreover, delaying *discovery* of net worth until after the jury finds defendants liable for violating the Fair Housing Act is an unwieldy procedure that has not found favor in the federal courts.  If, as defendants propose, discovery is delayed until mid-trial, a "determination at trial that such information would be properly admissible would likely require a delay in the presentation of evidence so that permissible discovery could then be carried out. The safer course is to complete permissible discovery before trial so that the information discovered will be available to offer at trial if it is found to be admissible."  *St. Joseph Hosp. v. INA Underwriters Ins. Co.*, 117 F.R.D. 24, 26 (D. Me. 1987); *Echostar Satellite LLC v. Viewtech, Inc.*, No. 07-CV-1273 W (AJB), 2009 WL 10672432, at *2 (S.D.

Cal. July 11, 2009) (to deny discovery of net worth until plaintiffs can make a showing of a prima facie case at trial "would only lead to delay and confusion while Plaintiffs digest the information.").

And, as discussed below, evidence of liability and financial evidence is not easily compartmentalized in this case. The evidence plaintiffs will use to establish the liability of Nijjar and Kler under the Fair Housing Act will be based in part on proof of their ownership and control of a portfolio of residential real estate – i.e., evidence that makes up part of their net worth – that has been the subject of prior discrimination complaints, making that evidence admissible for both determining liability and assessing punitive damages.

### 2. Defendants' anticipated summary judgment motion does not justify staying the discovery order.

Under Federal Rule of Civil Procedure 26(c), a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" related to discovery matters. A party seeking a stay of discovery carries a heavy burden of making a strong showing why discovery should be denied, presenting "a particular and specific need for the protective order," as opposed to "stereotyped or conclusory statements." *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (citations and internal quotation marks omitted). The Court's decision to stay discovery pending the resolution of a potentially dispositive motion is discretionary. *See Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981).

The Ninth Circuit has not provided a clear standard for district courts to use when determining whether to stay discovery pending resolution of a potentially dispositive motion. *See Bride v. Snap Inc.*, No. 2:21-CV-06680-FWS-MRW, 2022 WL 17184600, at *2 (C.D. Cal. Oct. 21, 2022) (discussing various standards). Federal courts in California often use a two-part test, determining that "it is appropriate to stay discovery if (1) the pending motion [is] potentially

dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed, and (2) the pending, potentially dispositive motion can be decided absent additional discovery." *Bride*, at *2-3 (internal quotations and citations omitted). Here, the two-part test does not support ordering a stay of net worth discovery. Although any summary judgment motion may be potentially dispositive, in this case summary judgment cannot be granted without allowing plaintiffs to obtain the discovery they have obtained an order compelling the production of.

Defendants read Judge Kato's order as granting plaintiffs' motion only because defendants had not yet filed a motion for summary judgment.  (ECF 45.) Therefore, they posit, it makes sense to stay the order to allow them time to file that motion.  If that were a legitimate position, no discovery would ever by had by plaintiffs until they survived a summary judgment motion.  In any event, that is an unduly narrow reading of the order.  Rather, defendants themselves only raised one argument in opposition to plaintiffs' motion to compel net worth – that Nijjar and Kler did not own the Villa La Paz Apartments and had no interaction with Beasley and would therefore "be filing a motion for summary judgment and partial summary judgment (with respect to punitive damages)."  (ECF 38-1 at 37-38.)

*Plaintiffs*, however, argued that the discovery was relevant to establish the amount of punitive damages, but that it also would be used to establish that Nijjar and Kler had actual ownership and control over their rental properties (despite holding them in corporate form).  (ECF 39 at 2-5.)  Plaintiffs argued:

> Request No. 15 seeks documents establishing who has putative and actual control over the Villa La Paz Apartments. (ECF 38-1 at 31-33.) Defendants Mike Nijjar, Daljit Kler, Group XIII Properties, LP and Group XIII Properties, Inc. have indicated that they intend to move for summary judgment on the grounds that they may not be held directly or vicariously liable for the discrimination against James Beasley because they neither owned nor managed the Villa La Paz Apartments when his rental

1    application was rejected. (Id. at 9.) In support, defendants submit a deed
2    recorded by the Riverside County Recorder on July 30, 2021 that reflects a
3    transfer from Group XIII Properties, LP to DHA Opportunity 1, LP dated
4    and notarized January 2, 2019. (ECF 38-45 at p. 6 of 49.) That deed is titled
5    "Correction Grant Deed" with the word "Correction" handwritten and
6    reflects payment of a documentary transfer tax, also handwritten, in the
7    amount of $2,659.80.  (ECF 38-45.) The deed conflicts with one plaintiffs
8    obtained from the Riverside County Recorder's Office, recorded one day
9    earlier, a copy of which is attached as Exhibit 1 to the Supplemental
10   Brancart Declaration attached. That earlier deed, also signed by Mike Nijjar
11   as president of Group XIII Properties, Inc. is dated May 13, 2021, and
12   notarized on July 13, 2021. It indicates that the documentary transfer tax is
13   "0.00" because it is exempt from tax for the following reason: "The
14   Grantors and Grantees in this conveyance are comprised of the same parties
15   who continue to hold the same proportionate interest in the property." (Id.)
16   According to those filings, Group XIII Properties transferred the Villa La
17   Paz Apartments to DHA 1 Opportunity twice – on January 2, 2019, and then
18   again on May 13, 2021 – with conflicting statements as to whether
19   consideration was paid for the transfer. [Footnote omitted.] *This evidence*
20   *does not suggest an arms-length transaction, which must be shown if*
21   *defendants are to be allowed to claim that Mike Nijjar and Daljit Kler do*
22   *not own or control the defendant entities.* But defendants have withheld the
23   documents needed by plaintiffs to challenge defendants' claim. Moreover,
24   although in recent responses to plaintiffs' requests for admission defendants
25   admit that on January 2, 2019, Group XIII Properties, LP transferred title of
26   the Villa La Paz Apartments to DHA Opportunity I, LP, defendants refuse
27   to admit or deny that "DHA Opportunity, LP paid no consideration in
28   connection with the January 2, 2019 transfer of the Villa La Paz apartments

1    title from Group XIII Properties, LP to DHA Opportunity, LP" in either

2    2019, 2020, or in 2021 prior to July 2021, stating only objections. (DHA

3    Opportunity's Response to Requests for Admission, Brancart Dec. ¶ 5, Exh.

4    4.)

5    ....

6    For the same reasons [that] discovery regarding ownership and control

7    should be ordered, the Court should order defendants to provide financial

8    information on Mike Nijjar and Daljit Kler.

9    (ECF 39 at 2-5 [emphasis added].)

10   Thus, the discovery defendants refuse to provide is necessary for plaintiffs

11   to be able to oppose defendants' intended motion for summary judgment on the

12   liability of Nijjar and Kler. The Court may not stay discovery pending resolution

13   of a dispositive motion – or here, an anticipated dispositive motion – when that

14   discovery is needed to litigate the dispositive motion. *Alaska Cargo Transp., Inc.*

15   *v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993).

16   Financial information regarding Nijjar and Kler's ownership interests in

17   their various limited partnerships and corporations is relevant here not just to

18   establish the *amount* of punitive damages, but also goes to the question of *whether*

19   to impose liability for compensatory damages on Nijjar and Kler and punitive

20   damages on the entities they control as well as upon Nijjar and Kler themselves.

21   Plaintiffs allege that Nijjar, "acting through various corporate entities, controls the

22   ownership and operation of hundreds of rental dwellings throughout Riverside

23   County, including the Villa La Paz apartments." (First Amended Complaint, ECF

24   32, ¶ 7.) Plaintiffs allege that "[t]he Fair Housing Council researched the

25   ownership and operation of the Villa La Paz apartments and determined that

26   dwellings were owned or operated by one of defendant Swaranjit (Mike) Nijjar's

27   companies, the source of numerous complaints by tenants in Riverside County.

28   Since 2014, the Fair Housing Council has received hundreds of complaints about

the condition and management of rental dwellings controlled by Nijjar."  (Id., ¶ 33.)

The Fair Housing Council will show that it processed  countless complaints against the properties in the portfolio of residential rental properties controlled by Nijjar and Kler, establishing their knowledge of ongoing wrongful conduct. Through the net worth discovery, plaintiffs will show defendants' ownership and control of those properties and establish that Nijjar and Kler were recklessly indifferent to federally protected rights through their inaction and ratification of the unlawful conduct of their agents and employees, failing to act in the face of knowledge of a pattern of unlawful conduct.  Principals may be held liable for punitive damages based on the torts of their agents in several ways, including if "the principal authorized the doing and the manner of the act," or if "the principal or a managerial agent of the principal ratified or approved the act." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 543 (1999) (quoting Restatement (Second) of Agency § 217C).  This factual scenario distinguishes this case from *Sanzaro v. Ardiente Homeowners Ass'n, LLC*, 364 F. Supp. 3d 1158, 1182 (D. Nev. 2019), cited by defendants, in which the plaintiffs attempted to hold a corporate officer liable based on his position without any proof of misconduct or ratification.

Plaintiffs have noticed and attempted to set the deposition of Mike Nijjar on three separate occasions and the deposition of Daljit Kler on two separate occasions, most recently in November 2022.  (Brancart Dec. ¶ 4; ECF 38-1 at 6; ECF 38-2 ¶¶ 9.)  They have never appeared although discovery closes in just over four weeks.  (Id.)  Plaintiffs need the net worth documents in order to conduct a complete deposition examination.  (Id.)  It is unclear how defendants will be able to obtain summary judgment in their favor on plaintiffs' claims in this situation.

**3.     Defendants cannot establish good cause to grant the stay based on harm to their privacy interests.**

Defendants argue that good cause exists to issue the stay because, without

1   the stay, they will be unduly harmed and prejudiced by the unnecessary

2   dissemination of their personal finances.  (ECF 45 at 8.)  But as Magistrate Judge

3   Kato has already found, "the protective order in effect will accommodate

4   Plaintiffs' need for the information while protecting Defendants' privacy."  (ECF

5   41 at 11.)  Indeed, the protective order in this case has an "attorney eyes only"

6   provision that provides even greater protection to defendants' privacy.  (ECF 35 at

7   3.)  Defendants' claims of prejudice and violation of privacy fail to present "a

8   particular and specific need for the protective order," as opposed to "stereotyped

9   or conclusory statements." *Skellerup Indus. Ltd. v. City of Los Angeles*, 163

10  F.R.D. at 600; *see also Nikon Corp. v. GlobalFoundries U.S., Inc.*, No.

11  17-MC-80071-BLF, 2017 WL 4865549, at *2 (N.D. Cal. Oct. 26, 2017) (denying

12  stay of discovery order where protective order in place and defendants could not

13  articulate why disclosure under the protective order would cause irreparable

14  harm).

15       Plaintiffs, meanwhile, will be prejudiced by the delay in receiving the court-

16  ordered discovery.  Discovery closes on March 27, 2023.  (ECF 37.)  As noted

17  above, defendants have not yet appeared for deposition.  Having to depose Nijjar

18  and Kler without having obtained and reviewed their financial documents would

19  unfairly put plaintiffs at a disadvantage in their trial preparation to establish both

20  liability of Nijjar and Kler as individuals and entitlement and amount of punitive

21  damages.

22                * * *

23       For all of these reasons, plaintiffs respectfully request that the Court deny

24  defendants' ex parte application for a protective order.

25       Dated:  February 23, 2023.

26                          BRANCART & BRANCART

27                          */s/ Elizabeth Brancart*
                        Elizabeth Brancart
28
                        Attorneys for Plaintiffs

1

2

### CERTIFICATE OF SERVICE

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, on February 23, 2023, I served by email via ECF a copy of the attached document –**PLAINTIFFS' OPPOSITION TO DEFENDANTS NIJJAR AND KLER'S EX PARTE APPLICATION FOR PROTECTIVE ORDER STAYING DISCOVERY ORDER; DECLARATION OF COUNSEL; EXHIBITS** – on the following attorneys:

Wayne Leech
Law Office of Wayne D. Leech
11001 Main Street, Suite 200
El Monte, CA 91731
*wayne@leechlaw.com*

Stephen Larson
Jerry Behnke
Jane Davidson
Larson LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
*slarson@larsonllp.com*
*jbehnke@larsonllp.com*
*jdavidson@larsonllp.com*

*/s/Elizabeth Brancart*