BRANCART & BRANCART
  Christopher Brancart (SBN 128475)
  *cbrancart@brancart.com*
  Elizabeth Brancart (SBN 122092)
  *ebrancart@brancart.com*
P.O. Box 686
Pescadero, CA 94060
Tel:   (650) 879-0141
Fax:   (650) 879-1103

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAIR HOUSING  COUNCIL OF RIVERSIDE COUNTY, INC., and JAMES BEASLEY, <br><br> Plaintiffs, <br><br> vs. <br><br> GROUP XIII PROPERTIES LP, GROUP XIII PROPERTIES, INC., SWARANJIT (MIKE)  NIJJAR, ELISA VALERIO, DHA OPPORTUNITY 1, LP, DHA OPPORTUNITY 1, INC., and DALJIT KLER <br><br> Defendants. | Case 5:21-cv-00941-JGB-KK <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS SWARANJIT (MIKE) NIJJAR AND DALJIT KLER'S MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing: <br> Date: April 17, 2023 <br> Time:  9:00 a.m. <br> Ctrm:  Riverside, Courtroom 1 <br><br> Judge:  Jesus G. Bernal <br><br> *Discovery cutoff:   March 27, 2023* <br> *Dispositive Motion Hearing Deadline: June 5, 2023* <br> *Pretrial Conference:  August 28, 2023* <br> *Jury Trial:  September 19, 2023* |

//
//
//
//
//
//

# TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.  PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Plaintiffs James Beasley and the Fair Housing Council of Riverside County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    Valerio, the Villa La Paz apartments, and Pro Management Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    Recent developments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Nijjar and Kler may be held liable as principals because they and their business are one single enterprise or joint venture. . . . . . . . . . 10

        1. Defendants have expressly or impliedly agreed to operate their real estate business as a joint venture with a common purpose. . . . . 11

            *a.*    *Organization and structure of Nijjar and Kler's common enterprise.* . . . . . . . . . . . . . . . . . . . . . . 12

            *b.*    *The emergency restructuring of Nijjar and Kler's joint, common enterprise.* . . . . . . . . . . . . . . . . . . . 14

            *c.*    *As a result of 2019 reorganization, the management of the Villa La Paz apartments changed in name only; the operation of Nijjar and Kler's joint enterprise remained the same.* . . . . . . . . . . . . . 15

        2.    Nijjar, Kler and their nominal corporate entities share a community of interest in the operation of the business as a single enterprise. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

            *a.*    *Nijjar and Kler represent to county recorders that they are one integrated enterprise.* . . . . . . . . . . . . . . . . . 17

            *b. Nijjar and Kler disregard the separate nature of their limited partnerships to use them for their personal business.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            *c.*    *The insurance arrangement between DHA Opportunity 1, LP and Pro Management Company also raises a disputed fact whether defendants operate as a single enterprise.* . . . . . . . . . . . . . . . . . . . . . . . 19

            *d. The quick business restructuring that occurred after the Department of Real Estate revoked the real estate licenses under which Pama Management and IE Rental Homes provided property management*

*services also suggests a single, integrated business enterprise.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*e.  The repeated misidentification of corporate officers raises the inference that the corporations are mere instrumentalities.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*f.  The structure of those new Nevada corporations raises the inference that they are mere instrumentalities of Nijjar and Kler because they operate without the fundamental prerequisite needed to comply with state Real Estate Law.* . . . . . . . . . . . 20

3.  Nijjar and Kler both control the joint venture . . . . . . . . . . . . . . . 21

B.    Nijjar and Kler may be held directly or vicariously liable under traditional tort and agency principles. . . . . . . . . . . . . . . . . . . . . . . . . 21

1.  Traditional agency principles apply to the claims in this case. . . 21

2.  DHA Opportunity 1, LP and DHA Opportunity 1, Inc. are vicariously liable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3.  Nijjar and Kler may be held directly liable based on their own conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*a.  Defendants knew or should have known of the discrimination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*b.  Nijjar and Kler are directly liable for failure to take action.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4.  Nijjar and Kler may be held vicariously liable as principals because Valerio was aided in accomplishing the tort by the existence of the agency relationship. . . . . . . . . . . . . . . . . . . . . . . . 25

C.    Nijjar and Kler may be held liable as the alter egos of their corporate entities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.    Nijjar and Kler may be held liable for punitive damages. . . . . . . . . . 27

V.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

**CASES**

*Anglo Chinese Shipping Company v. United States,*
  127 F. Supp. 553 (Ct. Cl. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Badami v. Flood,* 214 F.3d 994 (8th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 27

*Connor v. Great Western Savings and Loan Association,*
  69 Cal. 2d 850 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doe I v. Unocal Corporation,* 395 F.3d 932 (9th Cir. 2002). . . . . . . . . . . . . . . . 11

*F.T.C. v. Network Servs. Depot, Incorporated,*
  617 F.3d 1127 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fair Housing of Marin v. Combs,* 285 F.3d 899 (9th Cir. 2002). . . . . . . . . . . . . 27

*Federal Trade Commission v. Cardiff,*
  No. EDCV-18-2104-DMG-PLAx, 2020 WL 6540509 . . . . . . . . . . . . . . . 11, 26

*Frances T. v. Village Green Owners Assn.,* 42 Cal. 3d 490 (1986). . . . . . . . . 22, 23

*Harris v. Itzhaki,* 183 F.3d 1043 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Holley v. Crank,* 400 F.3d 667 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.,*
  235 Cal. App. 3d 1220 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Meyer v. Holley,* 537 U.S. 280 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 21, 22

*Miller v. Apartments and Homes of New Jersey, Inc.,*
  646 F.2d 101 (3d Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Mogilefsky v. Superior Court,*  20 Cal. App. 4th 1409 . . . . . . . . . . . . . . . . . . . . 22

*Pacific Gulf Shipping Company v. Vigorous Shipping and Trading S.A.,*
  992 F.3d 893 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Preferred Properties, Incorporated v. Indian River Ests., Inc.,*
  276 F.3d 790 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Southern California Housing Rts. Ctr. v. Krug,*
  564 F. Supp. 2d 1138 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*Shell Oil Company v. Prestidge,* 249 F.2d 413 (9th Cir. 1957). . . . . . . . . . . . . . 10

*Trans-Tec Asia v. M/V HARMONY CONTAINER,*
  435 F. Supp. 2d 1015 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vicioso v. Watson,* 325 F. Supp. 1071 (C.D. Cal. 1971) . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES AND REGULATIONS**

42 U.S.C. § 3601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

24 C.F.R. §100.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

24 C.F.R. §100.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

24 C.F.R. §100.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

HUD Final Rule on Quid Pro Quo and Hostile Environment
Harassment and Liability for Discriminatory Housing Practices,
81 Fed. 63054 (Sept. 14, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 10158. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Bus. & Prof. Code § 10050.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Bus. & Prof. Code § 10050.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cal. Govt. Code §12921(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**OTHER AUTHORITIES**

Restatement (Second) of Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# I. INTRODUCTION

Defendants Swaranjit (Mike) Nijjar ("Nijjar") and his sister Daljit Kler ("Kler") seek summary judgment on all claims asserting that each is merely a corporate officer of a property owner lacking any personal involvement in rental operations and, as such, neither may be held directly or vicariously liable for any unlawful practice alleged in this action. They point to *Meyer v. Holley*, 537 U.S. 280, 285 (2003), which explained that the Fair Housing Act "'normally imposes vicarious liability upon the corporation but not upon its officers or owners." (ECF 51 at 13.) But the circumstances in this case are far from normal.

Nijjar built his real estate business into a family enterprise. Nijjar and Kler grew that family enterprise into a rental property empire.[1] Nijjar and Kler continue, however, to individually own, operate, and control their rental property business as a joint family enterprise. What has changed over the years – and the basis for this motion – is Nijjar and Kler's creation and manipulation of dozens of closely held corporate entities that enable them to pose as mere corporate officers or absentee property owners. Through these nominal corporate entities, Nijjar and Kler continue to exercise direct control as individuals over their rental properties operating them as a common, joint enterprise. Based on the evidence submitted by plaintiffs, neither Nijjar nor Kler are entitled to invoke the limited liability protection afforded corporate officers and owners. Instead, each is directly and vicariously liable as individuals for the commission of discriminatory housing practices alleged in this action, including for punitive damages.

//

---

[1]See, for example, the complaint filed against Nijjar, Kler and related individuals and companies by their unpaid lawyer identifying pages and pages of eviction and civil actions he had filed on their behalf with respect to hundreds of their real properties. *Bouzane v. Nijjar, et al.*, attached as Exhibit 79 to the Compendium of Exhibits (ECF 60-79).

## II.  PROCEDURAL BACKGROUND

This fair housing action arises out of defendants' ownership and operation of the Villa La Paz apartments located at 675 South San Jacinto Street in Hemet. The original complaint named Nijjar, Elisa Valerio, and two corporate entities – Group XIII Properties, LP and Group XIII Properties, Inc. – through which Nijjar owned and operated those apartments, claiming that defendants violated the Fair Housing Act (FHA), California Fair Employment Act (FEHA), the Civil Rights Act of 1866 (§ 1982), and were negligent. After defendants advised that the property had been transferred, plaintiffs filed an amended complaint naming the new owner DHA Opportunity 1, LP, its general partner DHA Opportunity 1, Inc., and the corporation's president Daljit Kler. (ECF 32.)

Plaintiffs conducted written discovery, including a document subpoena to Pro Management Company, the entity identified by defense counsel Wayne Leech as the company managing the Villa La Paz apartments.  On July 30, 2022, Leech responded to that subpoena on behalf of Pro Management at the same time he served discovery responses on behalf of the named defendants. (Declaration of Christopher Brancart filed herewith ["C.Brancart"] ¶ 13, Exh. 10.)

Plaintiffs repeatedly tried but failed to take the depositions of defendants. Plaintiffs noticed the depositions of Nijjar and Valerio three times and the deposition of Kler twice. (C.Brancart Dec. ¶¶  2-8.)  Each time Leech advised plaintiffs that the dates were not available. (Id. ¶¶ 3, 5, 7, 9-10.)  Plaintiffs' requests for alternative deposition dates went unanswered.  (Id. ¶¶ 10-12.)  Despite that lack of cooperation, the declarations of Nijjar, Kler, and Valerio form the factual basis for defendants' motion.  (ECF 51-1, 51-2, 51-3.)  Based on their refusal to appear for deposition, the Court should disregard their declarations when considering their motion.

## III.  FACTUAL BACKGROUND

Because this motion focuses on the actions and relationship between Nijjar

1   and Kler and their corporate entities, the following factual statement provides a

2   basic summary of the facts.  The facts regarding the relationship between Nijjar,

3   Kler, and their businesses and establishing that they may be held personally liable

4   are developed in the argument below.

5       **A.      Plaintiffs James Beasley and the Fair Housing Council of**

6               **Riverside County**

7           In April 2020 James Beasley was looking for an apartment to rent in Hemet.

8   (Plaintiffs' Additional Material Facts filed herewith ["PAMF"] 1.)   Near the end

9   of April, Beasley made contact with Elisa Valerio, the manager of the Villa La Paz

10  apartments.  She said she would have apartments available to rent during the first

11  week of May.  (PAMF 2.)  Beasley submitted a rental application and on May 5

12  Valerio texted Beasley that his application had been approved and that he could

13  come see the apartment.  (PAMF 3-4.)  Beasley inspected a vacant  unit with

14  Valerio and her husband, observed that it was not ready for occupancy, asked that

15  it be cleaned and repaired prior to his move in, and overheard Valerio complain to

16  her husband, "This is why I don't like renting to n-----s; they are always

17  complaining."  (PAMF 5-8.)  When Beasley subsequently visited the complex, he

18  saw that the vacant unit was in the same poor condition. (PAMF 9.)  On May 8,

19  Beasley texted Valerio, asking whether he could bring the $800 deposit and pay

20  the first month's rent when the apartment was ready for move-in.  She replied that

21  the apartment had been rented.  (PAMF 9-10.)  Over the next few days Beasley

22  separately asked two friends to text Valerio about available apartments for rent at

23  the Villa La Paz. Valerio replied to each that an apartment was available.  But

24  when Beasley texted Valerio after she had replied to each friend, Valerio repeated

25  that the Villa La Paz had no vacancies.  (PAMF 11-15.)  Beasley complained to

26  the Fair Housing Council of Riverside County ("FHCRC"), which determined that

27  the Villa La Paz was owned or operated Nijjar or Kler or one of their real estate

28  corporations, landlords regarding whom FHCRC had received numerous

complaints in the past.  (PAMF 147-148.)  In 2017, FHCRC entered into a
settlement agreement with defendants' affiliated entity I E Rental Homes to
resolve a housing discrimination complaint filed with the Department of Fair
Employment and Housing.  (PAMF 151.)

**B.   Valerio, the Villa La Paz apartments, and Pro Management Company**

Pro Management Company managed the Villa La Paz apartments pursuant
to a property management agreement with DHA Opportunity 1, LP.  (PAMF 74.)
Pro Management employed defendant Elise Valerio as the resident manager of the
Villa La Paz apartments.  (PAMF 16, 48, 78.)  When Valerio refused to rent to
Beasley, she acted in the course and scope of her duties as resident manager.
(PAMF 78, 105-111.)

**C.   Recent developments**

Most recently on March 10, 2023, Joaquin Rodriguez, the resident manager
of a property in Riverside owned by a limited partnership controlled by Michael
Nijjar and managed by Pro Management Company, complained to the Fair
Housing Council regarding misconduct by Pro Management.  (PAMF 90-95.)  He
states that during his employment he reported to "Arlene" who worked out of the
Pro Management Office.  (PAMF 92.)  She instructed Rodriguez that he should
discourage African American rental applicants and favor Latino of white
applicants.  (Id.)  During his employment Rodriguez met Daljit Kler and Sherri
Wilson at the Pro Management office and attended at least one resident manager's
meeting with Kler.  (PAMF 93.)

**IV.  ARGUMENT**

Nijjar and Kler argue that "[n]one of the claims asserted by Plaintiffs
impose vicarious liability on corporate officers or owners for conduct in which
they did not participate."  (ECF 51 at 7.)  But, as demonstrated in plaintiffs'
separate statement and supporting evidence, Nijjar and Kler are engaged in a joint

enterprise for which each is individually liable, directly and vicariously.
Applying traditional theories of tort and agency liability to the unusual facts of
this case, both Nijjar and Kler may be held personally liable. *See Meyer v. Holley*,
537 U.S. at 285.

**A.      Nijjar and Kler may be held liable as principals because they and their business are one single enterprise or joint venture.**

Nijjar and Kler operate their rental property business as a single integrated
enterprise or joint venture.  They exercise direct and ultimate control over that
enterprise, creating and discarding corporate entities as mere instrumentalities in
that operation.  Under these circumstances, it is appropriate to disregard their
nominal corporate entities and hold each personally liable.

A joint enterprise is "an association of two or more persons who combine
their property, money, efforts, skill or knowledge to carry out a single business
enterprise with the objective of realizing a profit." *Shell Oil Co. v. Prestidge*, 249
F.2d 413, 415 (9th Cir. 1957).  Under federal common law principles, there are
four elements to a joint venture:

> (1) an agreement, express or implied, among the members of the
> group; (2) a common purpose to be carried out by the group; (3) a
> community of pecuniary interest in that purpose, among the members;
> and (4) an equal right to a voice in the direction of the enterprise,
> which gives an equal right of control.

*Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d 1015, 1032
(C.D. Cal. 2005) (applying federal common law and quoting Restatement
(Second) of Torts § 491 cmt. c (1965)); *see also In Shell Oil Co.*, 249 F.2d at 415-
16 (identifying common law factors for joint venture).  California law is similar.
*Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 863 (1968) (a joint
venture exists when there is "an agreement between the parties under which they
have a community of interest, that is, a joint interest, in a common business

1  undertaking, and understanding as to the sharing of profits and losses, and a right

2  of joint control.").

3       The elements of a common enterprise are similar to that of a joint venture.

4  A common enterprise may be established by "strongly interdependent economic

5  interests or the pooling of assets and revenues." *F.T.C. v. Network Servs. Depot,*

6  *Inc.*, 617 F.3d 1127, 1143 (9th Cir. 2010). *Network Servs.* upheld a finding of a

7  common enterprise between a husband and wife and their related corporations

8  where the evidence showed that the couple's companies "pooled resources, staff,

9  and funds; they were all owned and managed by [husband] Castro and his wife;

10  and they all participated to some extent in a common venture to sell internet

11  kiosks." *Id.* at 1142-43. *See also Fed. Trade Comm'n v. Cardiff*, No. EDCV-18-

12  2104-DMG-PLAx, 2020 WL 6540509, at *13 (C.D. Cal. Oct. 9, 2020)

13  (individuals liable as part of common enterprise where facts showed that

14  individuals "are beneficiaries and masterminds of a common enterprise to sell the

15  Products through the Entity Defendants, which constitute various iterations and

16  shells of one another").

17       As examined below, plaintiffs adduce sufficient evidence to establish that

18  Nijjar and Kler own and operate their rental property business pursuant to a joint

19  venture or common enterprise. As a result, each defendant – Nijjar and Kler and

20  their corporate entities – may be held personally liable for the violations alleged in

21  the complaint. A member of a joint venture is liable for the acts of its co-venturer.

22  *Doe I v. Unocal Corp.*, 395 F.3d 932, 970 (9th Cir. 2002) (Reinhardt, J.,

23  concurring) ("It is well-established as a federal common law principle that a

24  member of a joint venture is liable for the acts of a co-venturer."). When private

25  parties or corporations enter into a joint venture, the parties are jointly and

26  severally liable for the acts of their agents. *Anglo Chinese Shipping Co. v. United*

27  *States*, 127 F. Supp. 553, 556–57 (Ct. Cl. 1955).

28             **1. Defendants have expressly or impliedly agreed to operate their**

1                   **real estate business as a joint venture with a common purpose.**

2            The following evidence submitted by plaintiffs establishes defendants'

3 express or implied agreement to operate together for a common purpose:

4                  ***a.***     ***Organization and structure of Nijjar and Kler's***

5                  ***common enterprise.***

6          The organization and structure of  Nijjar and Kler's rental business raises

7 the inference that they agreed to operate their business as a joint venture or

8 common enterprise.  In the late 1970s, Nijjar obtained his real estate broker's

9 license, incorporated Nijjar Realty, Inc., and opened for business at 4900 Santa

10 Anita Avenue in El Monte, California.  (PAMF 17.)  As of 2011, the owners of

11 Nijjar Realty, Inc. were Kler, Nijjar, and his three sons, Sanjeet, Sabraj, and

12 Michael.  (PAMF 18.)  As of 2011, Nijjar Realty, Inc. operated its rental business

13 under the fictitious business name Pama Management Company (PAMF 19),

14 which was responsible for managing the rental properties in which Nijjar held an

15 ownership interest (PAMF 20).

16         Defendants incorporated Pama Management in 2015 to separate their rental

17 property management functions from their property purchases and sales of those

18 properties.  (PAMF 21.)  Nijjar remains the majority shareholder of Pama

19 Management, Inc.  Like Nijjar Realty, Inc., there are four other shareholders.

20 (PAMF 22.)  In August 2018, Everet Miller – then CEO and Chairman of Pama

21 Management, Inc. – explained in deposition testimony how the Nijjar family

22 structures its rental property business.  (PAMF 25.)  Miller testified:

23         • The Nijjar family usually holds ownership of a real property through a

24         limited partnership formed for that purpose.

25         • The general partner of the limited partnership is a corporation, usually

26         with a name similar to that of the limited partnership.  The other partner

27         would be the Nijjar family trust.

28         • The shareholders of the corporation serving as the general partner would

1    also be members of the Nijjar family.

2        • The share of profits and losses of the limited partnership is usually 1 to

3        3% to the general partner corporation and the remainder to the trust.

4        • Neither the limited partnership nor the corporation have employees.

5    (PAMF Facts 25-31.)  Defendants Group XIII Properties, LP and DHA

6    Opportunity 1, LP owned a combined total of 80 properties as of 2020.

7    (Defendants' Statement of Uncontroverted Facts, ECF 52 ["DSUF"] 13, 18.) They

8    are just two of more than 70 active limited partnerships along with more than one

9    hundred corporations and LLCs that list their business address as 4900 Santa

10   Anita Avenue in El Monte  (PAMF 33), the same business addressed listed by

11   Nijjar and Kler in their corporate and real estate license filings.  (See PAMF 7, 73,

12   76, 102, and E.Brancart Dec. Exhibit A [Kler DRE license printout].)

13       The ownership of the Villa La Paz apartments follows that common

14   template.  Nijjar is the sole shareholder of Group XIII Properties, Inc. which is the

15   general partner of Group XIII Properties, LP.  (PAMF 51-52.)  The general partner

16   has a 1% interest in the profits and losses and the limited partner – the Nijjar

17   Family Trust – maintains a 99% interest.  (PAMF 53-54.)  Kler is the sole

18   shareholder of DHA Opportunity 1, Inc., which is the general partner of DHA

19   Opportunity 1, LP.  (PAMF 55-56.)  The general partner has a 1% interest in the

20   profits and losses and the limited partner – Daljit Kler – maintains a 99% interest.

21   (PAMF 57-58.)  Group XIII Properties, LP purchased the Villa La Paz apartments

22   in 2018 and later transferred the property to DHA Opportunity 1, LP.  (DSUF 12,

23   15.)

24       Miller also testified in 2018 that in the normal course of business, each

25   limited partnership contracted with Pama Management, Inc.  to manage the

26   partnership's rental property.  (PAMF 32.)  Pama Management, Inc. managed

27   Nijjar properties throughout Southern California, with area divisions in El Monte,

28   San Bernardino, Hemet, Riverside, Pomona, Palmdale, Sacramento, and

1    Bakersfield.  (PAMF 34.)  Kler, also a licensed broker, oversaw Pama

2    Management's entire operations with assistance from Jesse Carrillo, her "chief of

3    staff."  (PAMF 24, 35.)  Area division supervisors reported to Kler, and resident

4    managers at individual rental properties reported to an area supervisor.  (PAMF

5    36-37.)  For several years, ending sometime in 2019, Pama Management, Inc. also

6    operated under the fictitious business name, I E Rental Homes.[2]  (PAMF 23.)

7    Sherri Wilson served as the director for human resources for both Pama

8    Management and I E Rental Homes.  (PAMF 39-40.)  Pama Management, Inc. dba

9    I E Rental Homes managed the Villa La Paz before 2020.  (See PAMF 46-47.)

10               **b.     *The emergency restructuring of Nijjar and Kler's joint,*

11                       *common enterprise.*

12        On March 22, 2019, the California Department of Real Estate (DRE)

13    revoked the real estate licenses of Nijjar Realty, Inc. and Everet Miller, the

14    designated officer/broker of Pama Management, Inc. dba I E Rental Homes and

15    Nijjar Realty Inc.  (PAMF 41.)  That revocation created an existential crisis for

16    Nijjar and Kler's rental property business because the California Real Estate Law

17    requires a "real estate broker" license for "a person who [among other things], for

18    compensation . . . leases or rents or offers to lease or rent . . . or collects rent from

19    real property."  Cal. Bus. Prof. Code § 10131(b); § 10130 (licensure required).

20    The steps taken to remedy that dire situation support the inference that defendants

21    agreed to operate their rental property business as a joint enterprise with a

22    common purpose.

23        Less than one month after the DRE revoked the license of Nijjar Realty and

24    Miller, Pama and I E Rental Homes' designated officer broker, Nijjar and Kler

25    reorganized their rental property business.  On April 16, 2019, Jesse Carrillo,  Kler

26    ─────────────────

27        [2]Kler was a corporate officer of I E Rental Homes, Inc. and Everet Miller,
     CEO and designated officer broker of Pama Management, Inc., served as I E
28    Rental Homes' designated officer broker.  (PAMF 103-104, 114.)

1    and Pama's chief of staff, filed articles of incorporation with the Nevada Secretary

2    of State incorporating eight new real estate management companies, including Pro

3    Management Company Inc.[3]  (PAMF 42-43.)  Each of those filings identified

4    Carrillo as the president and director of the new corporation, including Pro

5    Management.  (PAMF 43.)  Next, in May 2019, Carrillo registered each of those

6    new Nevada corporations with the California Secretary of State as a foreign

7    corporation doing business in California, including Pro Management.  (PAMF

8    118, 122, 126, 130, 134, 138, 142, 146.)  Last, in August 2019, the DRE granted a

9    corporate real estate license to each new corporation, including Pro Management;

10   as required under the state Real Estate Law, each licensee designated a corporate

11   officer/broker, in each case Scott Steven Brown.  (PAMF 119, 123, 127, 131, 135,

12   139, 143.)  Each of these newly incorporated, registered, and licensed corporations

13   share the same El Monte address with Group XIII Properties, LP, Group XIII

14   Properties, Inc., DHA Opportunity 1, LP, DHA Opportunity 1, Inc., Golden

15   Opportunity No. 17 LP, Pama Management, Inc., I E Rental Homes Inc., Nijjar

16   and Kler.  (PAMF 44.)

17              *c.    As a result of 2019 reorganization, the management of*

18              *the Villa La Paz apartments changed in name only; the*

19              *operation of Nijjar and Kler's joint enterprise remained the*

20              *same.*

21        Despite the new corporate and licenses in 2019, Nijjar and Kler continued to

22   operate their rental property business as a joint enterprise as they did before 2019.

23   For example, defendant Elise Valerio's employment records shows that the Villa

24   La Paz management change from Pama Management/I E Rental Homes to Pro

25   Management Company was a change in name only.   Pama Management/I E

26   _____

27        [3]Because defendants' attorney objected on behalf of Pro Management and
     refused to produce materials in response to plaintiffs' subpoena (C.Brancart Dec.
28   ¶¶ 13-15),  plaintiffs do not have ownership information for Pro Management.

Rental Homes hired Valerio in February 2019 as the resident manger for as the Villa La Paz. (PAMF 46.) Valerio's original, signed employment agreement was between Valerio and Pama Management; Valerio also signed an acknowledgment in February 2019 that she had received the Pama Management Employee Manual. (PAMF 46-47.) On December 19, 2019, Valerio separated from I E Rental Homes because of "business closure" and executed a new employment agreement with Pro Management Company, Inc. that was virtually identical to the one she had previously executed in February with Pama/IE Rental Homes. (PAMF 48.) When Valerio resigned from her position with Pro Management in March 2021, the form used by Pro Management to document her resignation contains a line at the bottom for "PAMA USE." (PAMF 49.) Sherri Wilson signed the document confirming Valerio's resignation as "Human Resources" for Pro Management. (PAMF 50.) The operation of Pro Management was identical to the operation of Pama Management. As before, Kler and Wilson continue to supervise and meet with Pro Management's area supervisors and resident managers as they had under Pama/I E Rental Homes. (Compare PAMF 36-40 with PAMF 91-93.)

The 2019 change in name only is not unique to Pro Management and the Villa La Paz apartments. In a 2022 declaration, Los Angeles Police Department officer Carol Sawamura described her experiences policing the Vanowen Apartments, a Pama-managed complex in Los Angeles. Sawamura attests that she has communicated closely with the owners and operator of that complex since 2009, that the owners and operators have not changed, but that the names under which they manage the complex have changed from Pama Management, to Golden Management, to, most recently, Regency Management. (PAMF 45.)

## 2. Nijjar, Kler and their nominal corporate entities share a community of interest in the operation of the business as a single enterprise.

The conduct of Nijjar and Kler themselves strongly supports a finding that

1  they view their business as a single enterprise operated for a common purpose and

2  a common pecuniary interest, sharing in profits and losses.

3          ***a.     Nijjar and Kler represent to county recorders that they***

4                  ***are one integrated enterprise.***

5          Although Group XIII Properties, LP purports to be a limited partnership

6  owned by Nijjar and his wife and DHA Opportunity 1, LP purports to be a limited

7  partnership owned by Kler, those limited partnerships have represented to county

8  recorders that they are, in fact, a single entity.  Group XIII Properties, LP has

9  made repeated property transfers to DHA Opportunity 1, LP and represented to

10 Riverside and San Bernardino County Recorders that the transfers were not

11 subject to transfer tax because the grantors and grantees were the "same parties."

12 (PAMF 66-67, Compendium Exhibits 14-15 [emphasis added.)  These

13 representations by Nijjar and Kler are not limited to the entities named as

14 defendants in this action.  For example, in August 2019 Golden Opportunity No.

15 17 LP transferred a property to DHA Opportunity 1, LP and claimed that it was

16 not subject to the documentary transfer tax because the grantor and grantees were

17 the same party.  (PAMF 72, Compendium Exhibit 20.)  But the public record

18 reflects that the limited partner of Golden Opportunity No. 17 LP was not Daljit

19 Kler but Sanjeet Nijjar, son of Swaranjit Nijjar (and one of the owners of Nijjar

20 Realty, Inc. dba Pama Management).  (PAMF 18, 72-73, Compendium Exhibit

21 21.)  If the separate corporate nature of the grantors and grantees is respected,

22 these transfers perpetrate a fraud.  The only way for these representations to be

23 true is if the Nijjar family's business is one enterprise and it should be so viewed.

24 It is "unjust to permit those who control companies to treat them as a single or

25 unitary enterprise and then assert their corporate separateness in order to commit

26 frauds and other misdeeds with impunity." *Las Palmas Assocs. v. Las Palmas Ctr.*

27 *Assocs.*, 235 Cal. App. 3d 1220, 1249 (1991).

28         Public records raise the inference that Nijjar intended to transfer the Villa

1  La Paz apartments to Kler making the same representation to the Riverside County

2  Recorder as reflected in the property deeds just discussed, but that plaintiffs'

3  lawsuit derailed that plan.  (See PAMF 59-65.)  In a grant deed signed January 2,

4  2019, Group XIII Properties, LP purported to transfer title of the Villa La Paz

5  apartments to DHA Opportunity 1, LP.  Nijjar executed the grant deed as President

6  of Group XIII Properties, Inc., the general partner of Group XIII Properties, LP,

7  transferring title to DHA Opportunity 1, LP on January 2, 2019, but that deed was

8  not recorded.  (PAMF 59-60.)  Then, a second grant deed – dated May 13, 2021

9  but not notarized until after plaintiffs served this lawsuit – purported to make the

10  same transfer, noting that no transfer tax was due because the grantor and grantee

11  "are comprised of the same parties who continue to hold the same proportionate

12  interest in the property."  (PAMF 60-63, Compendium Exhibit 13.)  That deed was

13  recorded on July 29, 2021.  (PAMF 61.)  Then, the very next day, defendants

14  recorded the original January 2, 2019 deed, with a handwritten change in title –

15  "Correction" Grant Deed – and a handwritten note stating "correcting transfer

16  fee."  (PAMF 64; Compendium Exhibit 12.)  The original, uncorrected January 2,

17  2019 deed, appears to have contained language stating that $0 Documentary

18  Transfer Tax was due because of an exemption, but that language has been whited

19  out in recorded version.  (PAMF 65.)  These circumstances do not reflect an arms-

20  length transaction between two separate corporate entities.

21              **b.  *Nijjar and Kler disregard the separate nature of their***

22                  ***limited partnerships to use them for their personal business.***

23          Group XIII Properties, LP has made what it contends are "bona fide gifts"

24  of real property to DHA Opportunity 1, LP.  (PAMF 68, 70.)  There is no

25  corporate benefit to Group XIII to "gift" assets away to another limited

26  partnership.  And, concurrent with or shortly after recording these "gift" transfers,

27  DHA Opportunity 1, LP took out substantial mortgages on the gifted properties –

28  one for $900,000 and another for $1,560,000 – raising the question of what kind

1   of "gift" was involved.  (PAMF 69, 71.)  These transfers also support the inference

2   that Nijjar and Kler share the profits and losses of the business.

3                       ***c.  The insurance arrangement between DHA Opportunity 1,***

4                       ***LP and Pro Management Company also raises a disputed fact***

5                       ***whether defendants operate as a single enterprise.***

6        In the management contract between DHA Opportunity 1, LP and Pro

7   Management, DHA Opportunity 1, LP agreed to provide all insurance for the

8   operation of the Villa La Paz apartments, including general liability insurance.

9   (PAMF 75-76.)  The insurance binder that plaintiffs obtained by subpoena from

10   defendants' insurer covers DHA Opportunity LP and Group XIII Properties, LP,

11   but is issued to Pama Management, Inc. as the "parent company."  (PAMF 77,

12   Compendium Exhibit 30.)  This means that Pro Management, the successor of

13   Pama Management, is insured by DHA Opportunity 1, LP, which is insured under

14   its "parent" Pama Management, Inc.  Defendants clearly view Pama Management

15   and their properties as a single enterprise.

16                       ***d.  The quick business restructuring that occurred after the***

17                       ***Department of Real Estate revoked the real estate licenses***

18                       ***under which Pama Management and IE Rental Homes***

19                       ***provided property management services also suggests a***

20                       ***single, integrated business enterprise.***

21        Creation of eight new Nevada corporations, filing to do business in

22   California, and obtaining seven new broker's licenses to enable those corporations

23   to provide property management services reflects centralized coordination and

24   control.  (PAMF 42-43, 116-146.)

25                       ***e.  The repeated misidentification of corporate officers raises***

26                       ***the inference that the corporations are mere***

27                       ***instrumentalities.***

28        Nijjar and Kler have repeatedly filed corporate statements with the

1   California Secretary of State in which they misidentify officers and directors and
2   which are signed by persons as officers who are not officers.  (PAMF 96-101.)
3   These repeated errors raise the inference that the identification of persons
4   nominally charged with controlling the corporations is unimportant because the
5   business operates as a single enterprise controlled by Nijjar and Kler.

6                      ***f.  The structure of those new Nevada corporations raises the
7                      inference that they are mere instrumentalities of Nijjar and
8                      Kler because they operate without the fundamental
9                      prerequisite needed to comply with state Real Estate Law.***

10          The real estate corporations established, owned, and controlled by Nijjar
11  and Kler are subject to licensing regulations for the "protection of the public."
12  Cal. Bus. & Prof. Code § 10050.1.  A broker's license comes with conditions and
13  duties, including the obligation to ensure real estate transactions comply with fair
14  housing laws.  Cal. Bus. & Prof. Code § 10050.1; 10 Cal. Code Reg. § 2725.  One
15  of the results of defendants' manipulation of corporate entities is the creation real
16  estate corporations, including Pro Management Company, that fail to comply with
17  those licensing laws – another fact that suggests the functionality of separate
18  corporations is unimportant to Nijjar and Kler because their entire business
19  operates as one enterprise.

20          Specifically, in order to be licensed to conduct real estate transactions or
21  renting rental properties for compensation, a corporation must designate a licensed
22  broker to serve as the licensed officer/broker of the corporation.  Cal. Bus. & Prof.
23  Code §§ 10158 & 10211; *Holley v. Crank*, 400 F.3d 667, 671 (9th Cir. 2005).  The
24  licensed  officer/broker must be an officer of the corporation.  *Id.*, §§ 10159,
25  10211.  If he is not, then the corporation cannot act as real estate broker renting
26  real estate for compensation.  *Id.,* § 10131(b); 10 Cal. Code Reg. § 2740 ("No acts
27  for which a real estate license is required may be performed for, or in the name of,
28  a corporation when there is no officer of the corporation licensed under Section

10158 or 10211.")  By design, the state law requires that an individual, empowered as a corporate officer and qualified as a licensed broker, undertake duties of supervision and be held responsible for a real estate corporation's conduct.  *Id.*, § 10159.2.

While both Nijjar and Kler are licensed brokers, they are not the designated officers of any of the Nevada management corporations established by defendants within weeks of the DRE revoking the real estate licenses of Nijjar Realty and Miller.  Instead, each of those corporations, including Pro Management, designated Scott Brown as their designated officer/broker – a person who has never been an officer of any of them – rendering each out of compliance with the licensing law and unable to conduct licensed activities.  (PAMF 112-146.)

### 3.  Nijjar and Kler both control the joint venture

Daljit Kler oversaw Pama Management's entire operations.  (PAMF 24, 35-37.)  Swaranjit Nijjar has given his sister Daljit Kler "100 percent control" of the operation of the management of all buildings under Pama Management's control.  (PAMF 80.)  The right to control can exist even though there is not exercise of control.  *Vicioso v. Watson*, 325 F. Supp. 1071, 1075 (C.D. Cal. 1971).  No one but Kler and Nijjar could exercise control over the enterprise and the fact of joint control satisfies the final element to establish that Nijjar and Kler operated their business as a joint venture or enterprise.

Based on all of these facts, plaintiffs have raised a genuine issue of material fact whether Nijjar and Kler may be held liable as participants in a joint venture or enterprise with their limited partnerships and corporations and therefore be liable for the discriminatory housing practices at the Villa La Paz apartments.

**B.     Nijjar and Kler may be held directly or vicariously liable under traditional tort and agency principles.**

**1.     Traditional agency principles apply to the claims in this case.**

1    An action under the Fair Housing Act is, in effect, a tort action and

2  common-law principles of liability generally apply.  *Meyer v. Holley*, 537 U.S.

3  280, 285 (2003).  Whether an agency relationship exists is a question of fact.

4  *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999) (FHA); 2 Cal. Code Regs.

5  12010(b)(1) (FEHA).

6    Regulations promulgated by HUD interpreting the FHA provide that an

7  individual may be held directly *or* vicariously liable for discriminatory housing

8  practices.  24 C.F.R. §100.7.  HUD's interpretation of the FHA is entitled to

9  deference.  *Meyer*, 537 U.S. at 287-88.  Nijjar and Kler are directly liable for their

10  "own conduct that results in a discriminatory housing practice," or for "[f]ailing to

11  take prompt action to correct and end a discriminatory housing practice by that

12  person's employee or agent, where the person knew or should have known of the

13  discriminatory conduct."  24 C.F.R. §100.7(a).  General agency principles also

14  impose direct liability on a person for harm to third parties if he is "negligent or

15  reckless" in "permitting, or failing to prevent, negligent or other tortious conduct

16  by persons, whether or not his servants or agents, upon premises or with

17  instrumentalities under his control."  Restatement (Second) of Agency § 213(d).

18    Regulations interpreting California's FEHA are similar, but broader.  2 Cal.

19  Code Regs. § 12010.  Those regulations are also entitled to deference.  *Mogilefsky*

20  *v. Superior Court*,  20 Cal. App. 4th 1409, 1417 n. 4 (1993).  Direct liability based

21  on failure to take prompt action to end a discriminatory housing practice where the

22  person knew or should have known of the conduct, includes liability where the

23  persons' supervisors, managers, or principals "had or should have had such

24  knowledge." 2 Cal. Code Regs. § 12020(a)(1)(B); *see also Frances T. v. Vill.*

25  *Green Owners Assn.*, 42 Cal. 3d 490, 510 (1986) (directors and officers liable for

26  negligent nonfeasance where they knew that a condition or instrumentality under

27  their control posed an unreasonable risk of injury to the plaintiff, but then failed to

28  take action to prevent it).  The "power, responsibility, or authority" to take prompt

action to end a discriminatory housing practice "can be derived from sources including contracts, leases, . . . or by federal, California, or local laws, regulations, or practices." *Id.* § 12020(a)(1)(C).

### 2. DHA Opportunity 1, LP and DHA Opportunity 1, Inc. are vicariously liable.

The motion at bar is limited to Nijjar and Kler only.  Defendants do not claim that DHA Opportunity 1, LP and DHA Opportunity 1, Inc., cannot be held vicariously liable for any discrimination committed by Valerio and her nominal employer, Pro Management Company.   Nor could they.  It is well-settled under the FHA that a the owner of rental property is liable for the discriminatory acts of its management company in the course of duties including, like here (PAMF 74, 78, 105-111), while showing apartments and communicating information regarding available rentals. *See, e.g., Harris*, 183 F.3d at 1054; *S. California Hous. Rts. Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1149–50 (C.D. Cal. 2007).

### 3. Nijjar and Kler may be held directly liable based on their own conduct.

#### a. Defendants knew or should have known of the discrimination.

Based on the declaration of Pro Management former employee Joaquin Rodriguez, plaintiffs have raised the inference that Kler knew or should have known that Pro Management was giving discriminatory instructions to its resident managers. (PAMF 90-93.)  Kler described her duties as head of Pama's operations as including regularly visiting the Pama offices. (PAMF 37-38.)  She and Sherri Wilson supervised and reviewed employees' performance. (PAMF 39-40.) Kler conducted weekly meetings with area supervisors and also was sometimes present for the on-site managers' regularly scheduled weekly meetings. (PAMF 38.)  In his declaration, Joaquin Rodriguez states that he had met Daljit Kler and Sherri Wilson at the Pro Management office and had attended at least one resident

-23-

managers' meeting with Kler.  (PAMF 91-93.)  A reasonable jury could find that
Kler continued her supervisory duties over from Pama to Pro Management.  And,
under California's FEHA, Kler is charged with the knowledge of agents and
employees, including the Pro Management area supervisors who Rodriguez
contends instructed him to discriminate.  2 Cal. Code Regs. § 12020(a)(1)(B).

### 2. Nijjar and Kler are directly liable for failure to take action.

Both Nijjar and Kler are real estate brokers with knowledge of the fair
housing laws.  (PAMF 24.)  But Defendants have a culture of failing to respond to
complaints concerning misconduct in the operation of their rental properties.
Pama Management and related entities have been the subject of administrative and
court filings alleging housing discrimination.  (PAMF 82-84.)  Kler, Sherri
Wilson, Jesse Carrillo and Everet Miller (while still with Pama) were aware when
lawsuits were filed.  (PAMF 81.)  In a HUD complaint filed in 2013, Inland Fair
Housing and Mediation Board (IFHMB) in San Bernardino County alleged that
Nijjar Realty, Inc., Pama Management, Sherri Wilson and related persons and
entities discriminated against African Americans and preferred to rent to Latinos.
(PAMF 82, Compendium Exhibit 43. ¶¶ 6-7.)  Separately, in 2018, entities
controlled by Nijjar and Kler including Pama Management, Inc., Nijjar Realty,
Inc., and I E Rental Homes Inc. entered into a Conciliation Agreement with the
United States Department of Housing and Urban Development resolving fair
housing claims by IFHMB.  (PAMF 84, Compendium Exhibit 44.)  As part of that
agreement signed by Sherri Wilson, respondents "agree[d] to comply with all the
provisions of the Fair Housing Act and acknowledged the Act's prohibition of
discrimination.  (Id.)  In 2017, FHCRC entered into a settlement agreement with I
E Rental Homes, signed by Sherri Wilson, to resolve a fair housing complaint filed
with the Department of Fair Employment and Housing in which they
acknowledged their duty not to discriminate.  (PAMF 151-152.)  Despite these
warning signs, defendants have no written fair housing policy.  (PAMF 85.)

1    Group XIII Properties, LP, IE Rental Homes, and Pama Management also

2    have been sued on multiple occasions by tenants asserting habitability claims.

3    (PAMF 87, Compendium Exhibits 36-38.)  Yet their properties continue to be the

4    subject of nuisance abatement and fire abatement actions by local government.

5    (PAMF 88, Compendium Exhibits 39-40 [abatement liens recorded in late 2022 by

6    City and County of San Bernardino].)  Daljit Kler had notice of the ongoing

7    problems.  Notices of administrative civil penalties on properties levied by local

8    government would be directed to Daljit Kler and it was her responsibility to

9    handle them.  (PAMF 86.)  Ongoing is a nuisance abatement action brought by the

10   City of Los Angeles regarding one of defendants' apartment complexes.  (PAMF

11   89.)  Despite meetings between the LAPD and the property ownership and

12   management representatives, including Daljit Kler, the crime concerns of the

13   police were never addressed, leading to the formal abatement action.  (PAMF 89;

14   Compendium Exhibits 41-42.)  Although not fair housing violations, the repeated

15   habitability complaints coupled with lack of action is strong evidence that Nijjar

16   and Kler maintain a policy of not responding to complaints or of willful blindness.

17   Regardless of any agency relationship with Valerio, plaintiffs have raised a

18   genuine issue of material fact whether Nijjar and Kler negligently or recklessly

19   failed to prevent Valerio's discriminatory housing practices because they had

20   control over the Villa La Paz apartments, knew or should have known of the

21   potential for discriminatory conduct, but failed to take remedial action..

22   Restatement (Second) of Agency § 213(d)..

23          **4.  Nijjar and Kler may be held vicariously liable as principals**

24          **because Valerio was aided in accomplishing the tort by the**

25          **existence of the agency relationship.**

26   According to HUD, the "traditional principles of vicarious liability"

27   applicable to the FHA include the standards that hold a principal liable for an

28   agent's conduct where it is undertaken "within the scope of employment, with the

apparent authority of the principal, *or that is otherwise aided by the agency relationship*." HUD Final Rule on Quid Pro Quo and Hostile Environment Harassment and Liability for Discriminatory Housing Practices, 81 Fed. Reg. 63054, 63064 (Sept. 14, 2016) (emphasis added); *see also* Restatement (Second) of Agency § 219(2) (principal also may be held vicariously liable where the agent was "aided in accomplishing the tort by the existence of the agency relationship").

Based on the evidence of Nijjar and Kler's responsibility for operating their business without taking the steps necessary to comply with federal and state law, including the fair housing laws, they have personally created a situation in which agents may engage in discriminatory housing practices. Those agents would not have been able to do so but for the agency relationship and Nijjar and Kler's failure to take remedial action. These facts raise a genuine issue whether Valerio was aided in her commission of discriminatory housing practices by the agency relationship and the culture of Nijjar and Kler's operation.

**C.     Nijjar and Kler may be held liable as the alter ego of their corporate entities.**

Plaintiffs have also raised a genuine issue whether Nijjar and Kler separately could be held liable under an alter ego theory. If, however, the Court finds that they operate their business as a joint venture or enterprise, it need not consider this separate theory of relief. *See Fed. Trade Comm'n v. Cardiff*, No. EDCV-18-2104-DMG-PLAx, 2020 WL 6540509, at *13 (C.D. Cal. Oct. 9, 2020) (no need to consider alter ego where joint enterprise shown). Under federal common law, to pierce the corporate veil a party must show "(1) the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own, [ ], (2) injustice will result from recognizing [the subservient entity] as a separate entity, [ ], and (3) the controlling entity had a fraudulent intent or an intent to circumvent statutory or contractual obligations." *Pacific Gulf Shipping*

1    *Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 898, 899 (9th Cir. 2021)

2    (internal citations and quotations omitted).

3    The same facts showing that Nijjar and Kler treated the assets of their

4    limited partnerships as personal assets to be transferred or gifted at will clearly

5    establishes that Group XIII Properties, LP and DHA Opportunity 1, LP have no

6    separate corporate interests of their own, but are subservient to the personal

7    interests of Nijjar and Kler. Allowing Kler and Nijjar to continue to raise the

8    corporate shield creates an injustice.  For years, Nijjar and Kler have successfully

9    relied on their positions as corporate officers to deflect liability for their personal

10   conduct.  (PAMF 149-150.)  Here, plaintiffs seek affirmative injunctive relief that

11   will require Nijjar and Kler to operate their business in compliance with the

12   federal and state fair housing laws.  Allowing them to escape that liability creates

13   is contrary to the intent of the FHA and FEHA, both of which identify the end of

14   housing discrimination as important public policies.  42 U.S.C. § 3601; Cal. Govt.

15   Code § 12921(b).  Finally, plaintiffs have presented evidence of intent to

16   circumvent statutory requirements by the property transfers based upon the

17   representations that the transfers were between the same owners.

18   **D.   Nijjar and Kler may be held liable for punitive damages.**

19   Punitive damages may be assessed under the FHA when a defendant's

20   conduct is shown to be motivated by evil motive or intent, *or* if it involves

21   reckless or callous indifference to the federally protected rights of others.  *Fair*

22   *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  An owner's direct

23   participation in the discriminatory conduct is not necessary.  Punitive damages

24   may be awarded under the FHA where a property owner ignored its duties under

25   the law or otherwise engaged in "knowledgeable inaction."  See *S. California*

26   *Hous. Rts. Ctr. v. Krug*, 564 F. Supp. 2d 1138, 1153 (C.D. Cal. 2007) (citing

27   *Miller v. Apartments and Homes of New Jersey, Inc.*, 646 F.2d 101, 111 (3d Cir.

28   1981); *Badami v. Flood*, 214 F.3d 994 (8th Cir. 2000)).  Proof of egregious or

outrageous behavior is not required. *Preferred Properties, Inc. v. Indian River Ests., Inc.*, 276 F.3d 790, 799 (6th Cir. 2002).

Based on the evidence discussed above, plaintiffs have established a disputed issue of fact whether Nijjar and Kler were reckless in ignoring their duties under law or otherwise engaging in knowledgeable inaction despite the risk of harm created by their agents' discriminatory conduct.

## V. CONCLUSION

For all of these reasons, the Court should deny defendants' motion in its entirety.

Dated:  March 26, 2023.

BRANCART & BRANCART

*/s/ Elizabeth Brancart*
Elizabeth Brancart

-28-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION**

The undersigned, counsel of record for plaintiffs, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 26, 2023.

BRANCART & BRANCART


*/s/ Elizabeth Brancart*

Elizabeth Brancart

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5 of the Federal Rules of Civil Procedure, on March 27, 2023, I served by email via ECF a copy of the attached document – **PLAINTIFFS' OPPOSITION TO DEFENDANTS NIJJAR AND KLER'S MOTION FOR SUMMARY JUDGMENT** – on the following attorneys:

Wayne Leech
Law Office of Wayne D. Leech
11001 Main Street, Suite 200
El Monte, CA 91731
*wayne@leechlaw.com*

Stephen Larson
Jerry Behnke
Jane Davidson
Larson LLP
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
*slarson@larsonllp.com*
*jbehnke@larsonllp.com*
*jdavidson@larsonllp.com*

*/s/Elizabeth Brancart*

-30-